On March 10, 1923, the board of directors of the Sibley State Bank adopted a resolution authorizing its cashier to negotiate a loan from the Exchange National Bank, of Shreveport, and to pledge collateral necessary to secure said loan.
The cashier of the Sibley State Bank, acting by virtue of this authority, borrowed $2,000 on April 26, 1923, and $7,000 on May 9, 1923, executing as evidence thereof a note for 90 days and a note for 30 days respectively. These notes were secured by the delivery and pledge to the Exchange National Bank of certain bills receivable held by the Sibley State Bank.
On May 24, 1923, the Sibley State Bank was placed in liquidation, and the Exchange National Bank was duly notified thereof by the commissioner in charge.
Prior to the filing of the liquidation proceedings, the creditor bank received $269.90 on account of said loan. When the Exchange National Bank received notice from the liquidating commissioner that the Sibley State Bank had ceased doing business, it immediately closed a checking account carried *Page 216 
with it by said bank, and credited the amount on deposit, $2,336.66, to the two notes which it held. The balance due on said notes was liquidated from collections made by the Exchange National Bank on the bills receivable held by it in pledge and by the payment of $600.83 by the liquidating commissioner, in order to obtain possession of the remaining bills receivable, as well as of the two notes evidencing the loan.
The present suit was instituted by the state bank commissioner and the special agent and liquidator of the Sibley State Bank to recover the amount collected on the bills receivable by the Exchange National Bank and the sum of $2,336.66 representing the balance on deposit to the credit of the debtor bank on the day it was placed in liquidation.
The district court rendered judgment in favor of plaintiff for $9,011.38, the amount collected on the bills receivable, and for $2,336.66, the amount on deposit to the credit of the insolvent bank. Defendant has appealed from this judgment.
Plaintiffs admit that the defendant bank is an ordinary creditor. Their attack is not against the validity of the loans, but it is directed against the legality of the pledge made to secure said loans. They allege that the resolution under the terms of which the loans were effected does not comply with the requirements of Act 193 of 1910, § 4, as amended by the Act 251 of 1916 and Act 97 of 1921.
The pertinent provisions of Act 97 of 1921 read as follows:
 "Section 4. That no officer of any state banking association, savings bank or trust company, shall have the right to borrow money and pledge or hypothecate any of its assets except in pursuance of a resolution of the board of directors duly entered upon its minute book, which resolution shall specify the maximum amount to be borrowed from any one bank or person, as well as the maximum amount to be borrowed altogether and shall likewise fix the maximum *Page 217 
amount of collateral to be pledged therefor; that whenever any state banking association, savings bank or trust company shall borrow upon bills payable, rediscounts, or certificates of deposit issued for borrowed money, or otherwise, for its use, any sum equal to three times its capital stock and declared surplus it shall be and is hereby prohibited from thereafter making any new loans to its customers or anyone else as long as it shall owe for borrowed money the amount as set forth herein: Provided, that every person or persons, corporation or corporations, who may lend money to any state banking association, savings bank or trust company, in good faith, on the pledge or hypothecation of any of its assets, or rediscount any of its loans on the faith of a copy of a resolution purporting to have been passed by the board of directors of said state banking association, savings bank or trust company, and certified by the cashier, treasurer, or secretary of the board of directors of said corporation to have been duly passed and entered upon the minute book of said corporation, shall be fully protected, and the same copy of such resolution shall be countersigned by one other officer or director of the borrowing institution: Provided, further, that the validity of any loans or pledge made on the faith of such a resolution as above outlined shall not be questioned even if said borrowing bank should have exceeded the limit herein fixed for it to borrow. Any bank officer violating the provisions of this act shall be subject to a fine of five hundred ($500.00) dollars for each and every new loan made after it shall have borrowed money equal or greater than the maximum amount set forth in this act."
Plaintiffs contend that the resolution under the terms of which the loans in question were authorized and made is defective, because it does not specify the maximum amount to be borrowed, nor does it fix the maximum amount of collateral to be pledged to secure the debt.
It is not disputed that the Exchange National Bank was in good faith in making said loans, and that it had in its possession, at the time, a copy of the resolution duly certified by the president and the cashier of the Sibley State Bank.
In these circumstances, we think the lending bank was amply protected in the pledge *Page 218 
of the bills receivable by the borrowing bank under the provisions of the statute:
 "That every person * * * who may lend money to any State Banking Association, * * * in good faith, on the pledge or hypothecation of any of its assets, * * * on the faith of a copy of a resolution * * * shall be fully protected," and "that the validity of any loans or pledge made on the faith of such a resolution as above outlined shall not be questioned even if said borrowing bank should have exceeded the limit herein fixed for it to borrow."
Manifestly, the purpose of the quoted section of the statute is to regulate and restrict the right and power of the officers and directors of a state banking institution to borrow money and to pledge and hypothecate its assets. It forms part of an act (193 of 1910) which was enacted, according to its title:
 "To regulate the business of state banking associations, savings banks and trust companies; to prescribe the qualifications and duties of directors and other officers and employees in such corporations, and to define the duties of the state examiner of state banks in reference thereto, and to provide penalties for the violation thereof."
Its declared object is to prohibit any state banking institution from borrowing upon the pledge of its assets in excess of a sum equal to three times its capital stock and declared surplus, and a penalty is provided for any officer or director of such banking institution violating the provision. No penalty is provided for any officer or director of the lending bank; nor does the statute require anything further of said bank in order to maintain the validity of its loan and pledge than that it shall act in good faith upon a copy of a resolution of the board of directors of the borrowing bank.
The case of Sims v. Athens Bank, 139 La. 324, 71 So. 525, interpreting section 4 of Act 193 of 1910, is inapplicable to the case before us. In the cited case the money was borrowed and the securities pledged by the cashier of *Page 219 
the borrowing bank without the authority of any resolution whatever. This court held the pledge was void as being made in violation of a prohibitory law, and recognized the lending bank as merely an ordinary creditor.
For the reasons assigned, the judgment appealed from is set aside, and it is now ordered that there be a judgment in favor of defendant, the Exchange National Bank, rejecting the demands of plaintiffs, J.S. Brock, state bank commissioner of Louisiana, and W.L. Perritt, special agent and liquidator of the Sibley State Bank, and dismissing their suit against said defendant. The costs of these proceedings are to be paid by the liquidators.
OVERTON, J., dissents.