OVERTON, J.
 

 This is a suit on two items of indebtedness. One of these is an indebtedness for $2,500, evidenced by a promissory note for that amount, executed by the Sibley State Bank, through its cashier, W. L. Alexander, and secured by a special mortgage on certain real property owned by the bank. The other is an item for $616.91 for state, parish, and special taxes that were due by the bank, and paid on April 23, 1923, by plaintiff. In the prayer of his petition, plaintiff asks, among other things, for the recognition and enforcement of his mortgage,- and also of his privilege, as subrogee of the state and parish, for the taxes that were due by the bank and paid by him. The suit was instituted against the bank, the state bank commissioner, and the bank’s special liquidator.
 

 The state bank commissioner and the special liquidator answered for the bank. They admit that plaintiff paid the taxes due by the bank, and concede that he is entitled to the privilege which he claims, but, in view of the fact that this item has been placed by them on the schedule of preferred claims, due by the bank, they contend that the item should be dismissed, reserving to plaintiff the right to be paid the amount thereof in due course of liquidation. They also admit that plaintiff is a creditor of the bank for the sum of $2,500, evidenced by the promissory note mentioned above, but take the position that the mortgage given to secure said indebtedness is null and void.
 

 The bank commissioner and the special liquidator contend that the mortgage is null and void for two reasons. One of these is that, in reality, the mortgage was given, not to secure a loan, as contended for by- plaintiff, but to secure a deposit. In taking this position, they view the note, which evidences this indebtedness, merely as a certificate of deposit, and cite(> in support of their position that the note may be so viewed, 3 Ruling Case Law, verbo “Banks,” § 202, p. 573. The second reason for contending that the mort
 
 *15
 
 gage is null is that, if it was not given to seeuré a deposit, but to secure a loan made, as contended for by plaintiff, on September 14, 1922, the date that the note bears, then that the money was borrowed without a res-' olution of the bank’s directorate authorizing the making of the loan, and hence that the loan is null and void, and, such being the case, that the mortgage necessarily falls with it.
 

 The record discloses, as relates to the making of the alleged loan and the granting of the mortgage, the following facts:
 

 Plaintiff, at the time the loan was made, was a country merchant, running a plantation store. He does not appear to be possessed of much education, though has apparently succeeded in accumulating some means. He was a stockholder in the bank, represented by the commissioner and the liquidator herein, and had an account with it. The largest credit that he appears to have had in the bank was on July 17, 1922, on which day he had a balance of $5,149.55. In September following, the bank, which was a small one, was in need of money, and apparently entertained fear that plaintiff would withdraw his balance. Inquiry was made by the bank’s cashier of its attorney as to whether the bank could borrow money from plaintiff and grant a mortgage on some improved property 'which it owned in Sibley to secure the loan. The reply was that it would be legal for the bank to do so, provided it was authorized to borrow the money and to grant the mortgage by a proper resolution of its board of directors, the resolution to be spread upon the minutes of the directors.
 

 In anticipation of the passage of such a resolution, plaintiff, according to his evidence, on September 14, 1922, drew a check on the bank in the latter’s favor for $2,500, the amount that the bank, through its cashier, desired to borrow. This check is not in evidence; plaintiff having testified that it was destroyed by him in the early part of the year following its payment in accordance with a custom of his to destroy his checks after payment in the first part of each succeeding year, but plaintiff’s evidence that it was drawn and paid is corroborated amply by other evidence in the record.
 

 A few weeks after the cheek had been drawn and paid, the bank’s cashier sent to the attorriey consulted by him a note for the amount of the loan, together with a mortgage, executed to secure its payment, against the property which plaintiff had agreed to accept as security, but the mortgage did not have attached to it a certified copy of a resolution of the board of directors authorizing the borrowing of the money and the granting of the mortgage. For that reason the note and mortgage were returned by the attorney to the cashier, and the request made of the latter to attach to the mortgage a certified copy of the resolution authorizing the transaction. As a matter of fact, no resolution had been passed authorizing the transaction, and matters remained in that situation until some time later.
 

 On the 1st of January, 1923, the loan matured. The cashier desired an extension of the loan for sir months. Plaintiff expressed his willingness to grant the extension, provided the bank would increase the rate of interest from January 1, 1923, from 4 per cent, to 4% per cent., and provided the bank would give him the mortgage promised.
 

 About this time plaintiff was elected a member of the bank’s board of directors. He protested against his election, though signed the o'ath of office together with other directors, but never attended a meeting, unless it was the first one held after his election. At that meeting, that is, the first one held after his election, the board elected the officers of the bank, and elected plaintiff vice president, but he x’efused to accept the office.
 

 On January 25, 1923, the board of direc
 
 *17
 
 tors, plaintiff being absent, took up for consideration for tbe first time tlie loan in question, and passed a resolution, and had the same spread upon the minutes, reciting that—
 

 “Whereas, it appears that the Sibley State Bank borrowed from S. L. Carter the sum of twenty-five hundred dollars on the-day'of •-, 1922, and that the said bank desires the use of said money for six months longer; now, therefore the cashier, W. J. Alexander, is hereby empowered and authorized to extend said loan and to pay therefor interest at the rate not to exceed four and one half per cent, per annum, and to execute in the name of the Sibley State Bank a mortgage on the Baker property, described as lot number 1, block B, Perritt addition to Siblej-, Webster parish, La., with all improvements thereon, to secure said loan and interest.”
 

 On February 2, 1923, which was a few days after the passage of the foregoing resolution, the cashier executed the note and the mortgage here sued on, dating the note, September 14, 1922, the date on which plaintiff contends he made the loan, and providing in the mortgage for the six-month extension to which plaintiff had agreed, attaching to the mortgage a certified copy of the foregoing resolution.
 

 The bank continued in business for nearly four months after the mortgage sued on was executed. The bank was then closed, and a liquidator appointed to liquidate its affairs.
 

 When the check for $2,500 which plaintiff testifies he drew in favor of the bank was delivered to the casliier, plaintiff had a balance in bank of $4,000.40, which was something over $1,100 less than the amount he had on July 17, 1922, on which date he had his largest balance. The payment of the check reduced plaintiff’s balance to $1,500.46. Thereafter plaintiff continued to deposit money in the bank, but his checks exceeded the deposits he was making, and, when the bank was closed, he had only a small balance to his credit.
 

 Opinion.
 

 In the absence of a statute authorizing it, a bank has no authority to pledge 01” mortgage its assets, or any of them, to secure a depositor for the amount, or any part thereof, deposited by him with the bank. Commercial Bank & Trust Co. v. Citizens’ Trust & Guaranty Co. of West Virginia, 153 Ky. 566, 156 S. W. 160, 45 L. R. A. (N. S.) 950, Ann. Cas. 1915C, 166. In this state, and we think properly so, there is no law authorizing a bank to grant a mortgage or pledge for such a purpose. The law of this state, however, permits a bank, organized under its laws, to borrow money and pledge or hypothecate its assets to secure the loan, but prohibits the bank or, which is the same thing, any officer thereof from doing so, save pursuant to a resolution of the bank’s board of directors, duly entered upon its minute book, specifying the maximum amount to í>eborrowed from any one bank or person, as well as the maximum amount of collateral to be pledged therefor. Act 97 of Ex. Sess. 1921, § 1; Sibley State Bank v. Exchange Nat. Bank, 159 La. 214, 105 So. 294; Thomas et al. v. Marine Bank & Trust Co., 157 La. 459, 102 So. 524.
 

 Since a bank cannot pledge or mortgage any of its assets to secure a depositor for the amount deposited with it by him, or for any part thereof, it is necessary for us, under the issues in this case, to decide whether the mortgage was given to secure a loan or a deposit. 1
 

 There can be no serious question that plaintiff drew a check on the bank for $2,-500, the amount which he says he lent the bank, on the day upon which he testifies he made the loan, to wit, September 14, 1922, for, in addition to other evidence to that effect, the books of the bank show that his account was charged on that day with a check for that amount. However, the books also disclose an entry under the same date which
 
 *19
 
 purports to show that on that day plaintiff! deposited with the bank $2,500, to bear 4 per cent, interest. The bank commissioner and the liquidator point to this entry as showing that plaintiff! did not lend the money to the bank, but merely changed the $2,-500 from one account to another.
 

 In our view, this entry does not reflect the truth. No deposit slip is shown disclosing that plaintiff made a deposit of that amount on that day or any other. It does not appear that this account was ever rendered to plaintiff. The entry is not only in direct conflict with plaintiff’s evidence, but is in conflict with the resolution of the board of directors, declaring that the bank had borrowed the money, and also in conflict with the evidence of the attorney, who represented the bank at that time, whose evidence leads to the conclusion that the transaction was a loan and not a deposit. It also may be observed that the cashier of the bank, who negotiated the transaction, and who, it may be here said, died before the trial of this case, was present at the meeting as a member of the board that passed the foregoing resolution, and apparently — in fact, it may be so skid with reasonable certainty — voted for it. Our conclusion is that the evidence mentioned outweighs and overcomes the entry showing the deposit at interest.
 

 But the bank commissioner and the liquidator urge that, even should we reach the conclusion just announced, still the transaction should not be considered a loan, because plaintiff did not make a loan in the usual sense of the term; that is, he did not advance to the bank any money over and above that which he had on deposit. This contention assumes that, to constitute a loan to a bank, the one making it must advance to the bank .money, not on deposit with it, even though, as was the case here, the deposit was subject to check. We think that this contention is not well founded. There is no statutory provision prohibiting such a transaction, and we see no sufficient reason why it should be held to be prohibited, when done in good faith, especially in the face of a statute (Act 97 of 1921) which authorizes officers of banks, upon receiving certain specified authority, to borrow money from other banks and from persons, and which attaches no such condition as the one here urged to the exercise of the authority granted! In this instance, plaintiff had an account in the bank, subject to check. He had a right to withdraw his money if he saw proper, and place it elsewhere, or to withdraw it for use in his business transactions, or for other purposes. In this instance he saw proper to check against his account and to lend the amount of the check to the bank. What the bank gained by the transaction was the right to use the money for the term of the loan. When the check was drawn and the money advanced, it does not appear that the bank was insolvent, or could not pay plaintiff’s checks in the ordinary course of business, though the bank was not then, we infer, in a very satisfactory condition. In our view, we should consider the transaction a loan.
 

 That which, perhaps, is a more serious question is that, when the cashier negotiated the loan, and consented to secure it, he did so without authority, and plaintiff loaned the money with the understanding that the mortgage would be given, knowing that the resolution required by Act No. 97 of 1921 had not been passed.
 

 While the consent given to the transaction by the cashier was null and void at the time it was given, yet in our opinion the borrowing of the money and the consent given to secure the loan by mortgage was susceptible of ratification, for the statute does not prohibit an officer of a bank from borrowing money for it and from pledging or hypothecating a part of its assets to secure
 
 *21
 
 the loan, but the prohibition relates only to the officer’s doing so without a proper resolution of the board of directors, entered upon the minutes. The requisite authority may be later supplied by the board of directors, if the bank is not insolvent when the authority is supplied, in which event the supplying of the authority will operate as a ratification of what was done. In this instance, we think the board of directors supplied the requisite authority, ratified what had already been done, so far as it had been done, and legally authorized the granting of the mortgage, when, on January 25, 1923, it passed a resolution, and caused it to be entered on the minutes, reciting that the $2,500 was borrowed by the bank from plaintiff, and authorizing the cashier to arrange for an extension of the loan for six months at 4% per cent, interest, and to secure the loan, which had not yet been done, by mortgage on the property described in the resolution; , this being the same property as that later mortgaged under the resolution. While the bank at that time was not in a very satisfactory condition, and was hard pressed for money, yet it does not appear that it was then insolvent, or that it was so when the mortgage was granted a few days later. In fact, the bank remained open for nearly four months after the passage of the resolution and the execution of the mortgage, during which time it conducted a regular banking business, including the reception of deposits, a fact which creates a presumption that it was then solvent, for had it not been solvent, the law would have demanded that it be closed, at least, for the reception of deposits. There is no evidence of bad faith on the part of the board, and no proof of bad faith on the part of plaintiff. What the board wanted was an extension of the loan for six months. Plaintiff had a right at that time to demand his money. The extension was granted, and the mortgage authorized by the board was executed to obtain it and to secure the loan. In these circumstances we think that the mortgage granted is valid, and should be so recognized.
 

 With reference to the item of $616.91, taxes due by the bank, and paid by plaintiff in the latter part of April, 1923, we see no reason to disturb the judgment allowing it and the privilege claimed in connection with it by plaintiff as subrogee. The item and privilege claimed are admitted to be correct, and the only reason urged for dismissing the item, is that it has been placed on the schedule as a preferred claim filed by the bank commissioner and the liquidator in the liquidation proceedings in the trial court. The affirmance of the judgment recognizing the item and privilege can do no harm. The item may be paid only in due course of the liquidation of the bank. The amendment of the judgment, in this respect, if made, would be only a formal, technical change, insufficient to throw the costs of appeal.
 

 For the reasons assigned, the judgment appealed from, which is in favor of plaintiff as prayed for, is affirmed.