HOLMAN, Respondent, v. COMMERCIAL & SAVINGS BANK et al., Appellants.

(Farmers' Security State Bank, Intervener.)

(210 N. W. 730.)

(File No. 6160.   Opinion filed November 20, 1926.)

1.   **Bank and Banking—Depositors.**
       Depositor in insolvent bank may set off deposit against his liability on note to bank.

2.   **Evidence.**
       Supreme Court will take judicial notice that banks of this state keep double entry system of bookkeeping.

3.   **Evidence—In Action to Cancel Note Held by Insolvent Bank, by Setting Off Deposit, Failure to Introduce in Evidence Books of Solvent Bank Held to Justify Inference that Books Did Not Support Claim that Transaction Constituted Loan to Solvent Bank and Not to Its President.**

In action to cancel plaintiff's note held by insolvent bank by setting off deposit, failure of plaintiff, president of intervener bank, or of intervener, to introduce in evidence intervener's books, held to justify inference that books did not support plaintiff's and intervener's claim that note was given to insolvent bank for loan to intervener, and not for personal loan to plaintiff.

4. **Banks and Banking—President of Solvent Bank Using Proceeds of His Note Given to Insolvent Bank Held Not Entitled to Set Off Solvent Bank's Deposit with Insolvent Bank Against Note, Regardless of Agreement Between Banks.**

If president of solvent bank obtained and used proceeds of notes signed by him as maker and on which loan was made by insolvent bank, he could not set off solvent bank's deposit in insolvent bank against such note, regardless of agreement between banks that note was executed to secure loan to solvent bank.

5. **Banks and Banking—Loan to Solvent Bank on Its President's Individual Note, Without Report to Superintendent of Banks as Required, Violates Statute, and Neither President Nor Solvent Bank Could Set Off Solvent Bank's Deposit in Insolvent Bank Against Note (Rev. Code 1919, § 8984).**

If transaction in which note signed by president of solvent bank as maker, and on which insolvent bank made loan, was loan to solvent bank and not to its president, and no report was made to superintendent of banks, it violated Rev. Code 1919, § 8984, relating to loans to banks, and neither president nor solvent bank was entitled to aid of equity court to set off solvent bank's deposit in insolvent bank against note.

6. **Bills and Notes—Payee Bank's Agreement to Charge Maker's Account with Amount of Note Not Then Due in Possession of Indorsee Held Not Legal Payment of Note.**

Agreement by payee bank to charge maker's account with amount of note not then due and in possession of indorsee not bound to accept payment, and who did not agree to do so, held not a legal payment of note.

Note.—See, Headnote **(1)**, American Key-Numbered Digest, Banks and banking, Key-No. 135, 7 C. J. Sec. 350, 537; **(2)** Evidence, Key-No. 20(2), 23 C. J. Sec. 1817 (Anno).; **(3)** Evidence, Key-No. 75, 22 C. J. Sec. 54; **(4)** and **(5)**, Banks and banking, Key-No. 135, 7 C. J. Sec. 350; **(6)** Bills and notes, Key-No. 427(2), 8 C. J. Sec. 828 (Anno.).

On right to set off deposit in insolvent bank against indebtedness to bank, see note in 25 A. L. R. 938; 3 R C. L. 529; 1 R. C. L. Supp. 845; 4 R. C. L. Supp. 194; 5 R. C. L. Supp. 178.

Appeal from Circuit Court, Minnehaha County; Hon. Herbert B. Rudolph, Judge.

Action by Ed Holman against the Commercial & Savings Bank and others. From a judgment for plaintiff and from an order denying a new trial, defendants appeal. Reversed, with directions.

*Roy E. Willy,* of Platte, and *M. G. Luddy,* of Sioux Falls, for Appellants.

*Peck & Wall,* of Sioux Falls, for Respondent.

BURCH, J. This action is brought for the purpose of having a certain note adjudged paid and satisfied, and to compel defendants to cancel and surrender said note. Defendants counterclaim and ask judgment on the note. Judgment was rendered as prayed for in the complaint, and defendants appeal from the judgment and an order denying new trial.

For a proper understanding of the questions involved it is necessary to have in mind the relation of the several parties to the transaction involved on the date of the transaction and subsequent thereto. Ed Holman, plaintiff, was a farmer and stock raiser living near Ahnberg and president of the Farmers' Security State Bank of Ahnberg, but not actively in charge of the bank. His son, M. E. Holman, was cashier and in active charge. Intervener is the above-named Ahnberg Bank. Defendant Commercial & Savings Bank of Sioux Falls was a going bank at the time of the transaction, but later became insolvent and at the time of the commencement of this action was in charge of defendant Smith, superintendent of banks of South Dakota. For convenience the two banks will hereafter be referred to as the Ahnberg Bank, having reference to the intervener, and the Sioux Falls Bank, having reference to defendant.

Some time in October or November, 1923, M. E. Holman, the son of plaintiff and cashier of the Ahnberg Bank, had a transaction with Louis Jacobs, cashier of the Sioux Falls Bank, as a result of which a note was executed for $5,600, dated October 27, 1923, payable February 25, 1924, to the Commercial & Savings Bank of Sioux Falls, with interest at the rate of 7 per cent. The note was executed, and plaintiff's name was signed thereto by M. E. Holman, but plaintiff admits that his son was authorized to so sign his name, and raises no question as to the validity of the note. A

chattel mortgage was also executed upon live stock to secure the note. The note was then sent to the Sioux Falls Bank, and $5,600 was credited to the account of the Ahnberg Bank, the Sioux Falls Bank being a correspondent bank of the Ahnberg Bank. The Ahnberg Bank had on deposit in the Sioux Falls Bank amounts equal to $5,600 or more during nearly all of the time following the transaction up to the time of the suspension of the Sioux Falls Bank, and at the time of the suspension of such bank the account of the Ahnberg Bank was over $6,000. It is claimed by the Ahnberg Bank, intervener, and also by the plaintiff, that the transaction was in fact made for and on behalf of the bank, and was a loan by the Sioux Falls Bank to the Ahnberg Bank upon the security of plaintiff's note; that the note is a primary obligation of the Ahnberg Bank and not of plaintiff; and for that reason the amount of the account in the Sioux Falls Bank standing to the credit of the Ahnberg Bank is a proper set-off against the note, on the theory that one owing an insolvent bank may set off his deposit against the debt. It is also claimed by plaintiff that the note was paid prior to the suspension of the Sioux Falls Bank. M. E. Holman, in giving his version of the transaction, testified:

"Our reserve was low, and we wanted money, and I came and told Mr. Jacobs about it and made arrangements with Mr. Jacobs to send down my father's note, well secured, and Mr. Jacobson would loan my bank the money on the note."

Jacobs testified:

"M. E. Holman came to the bank and said that his father would need some money, that he couldn't borrow from his own bank, and he wanted to know if we would loan him some money. I assured him we would. In that conversation I said we would like to have a chattel mortgage and a property statement, and later we received the note and chattel mortgage * * * and also the property statement. * * * Mr. Holman asked that we take the paper, credit the amount to the bank at Ahnberg for the use of his father, and his father would check it out. * * * Neither in that conversation nor at any time before or after did Ed Holman or M. E. Holman or anybody connected with the bank at Ahnberg ever make a statement to me that his father was borrowing money for the benefit of the bank."

[1]    If the note had been on its face the note of the Ahn-berg bank the bank would have had a right to set off its deposit in the Sioux Falls Bank against the note.    It may seem that equity and fair dealing ought to permit such set-off, if the obliga-tion is in fact the obligation of the bank, whatever the form of the transaction may be.    On the theory that such set-off would in equity be allowed, the evidence was chiefly directed to showing the nature of the transaction.    Plaintiff and intervener attempting to show the note was given for the sole use and benefit of the bank; defendants attempting to show the note was given for a per-sonal loan of plaintiff.

As the burden of proof was upon plaintiff and intervenor, defendants assign the insufficiency of the evidence to support the findings of the court.    Considerable stress is laid upon the fact that the proceeds of the note were credited by the Sioux Falls Bank to the Ahnberg Bank.    But this fact alone is not significant. That might be done where the loan was procured through the Ahnberg Bank, although for the benefit of the maker of the note. The books of the Ahnberg Bank were not introduced in evidence to trace the final disposition of the credited proceeds.

[2-4]    It is a fact of which this court will take judicial no-tice that banks of this state keep a double entry system of book-keeping.    For every credit there must be a corresponding charge against the bank.    The record made by the Ahnberg Bank at the time, subject to examination by the banking department, and re-flected in the reports of the bank to that dpartment, is very im-portant evidence in determining the equities sought to be invoked. There is no suggestion that the books of the Ahnberg Bank were not available and in the possession of intervener, and a failure to introduce them in evidence justifies the inference that the rec-ords of such bank would not support the oral testimony of plain-tiff's witnesses.    Whether or not plaintiff, who appears as maker, is entitled in equity to set off the deposit of the Ahnberg Bank against the note depends, not upon what was agreed to between the banks, but upon what was done with the proceeds.    If plain-tiff in fact obtained and used the proceeds, he has no such right of off-set, irrespective of any right of the Sioux Falls Bank against the Ahnberg Bank by virtue of an agreement.    It is very doubtful if plaintiff and intervener have sustained the burden of

proof required of them in this case, but as appellant challenges the correctness of the conclusions of law, before entering upon a detailed review of the evidence and the weight to be given to it, it will not be amiss to see if the premise upon which the court is proceeding is tenable—namely, that such set-off will be allowed if the note is in fact an obligation of the Ahnberg Bank. If such set-off is not allowable then all evidence of the bank's liability is immaterial.

[5] Banks are under the supervision and control of the banking department, and their manner of doing business is prescribed by law. It is contended by plaintiff and intervener that the transaction here involved was a means employed by the Ahnberg Bank to borrow money to increase its cash reserve. While a bank may borrow money, it may not legally do so, except with certain formalities. Section 8984 provides:

"* * * In all cases where money is borrowed a bank shall issue its 'bills payable' and shall show the true amount of borrowed money on its books, and in all reports and statements required by the provisions of this chapter, under 'bills payable.' * * * "

And earlier in this section it is provided:

" * * * That whenever a bank issues its bills payable for borrowed money, it shall within five days after the execution thereof forward to the superintendent of banks a duly verified copy of such bills payable and of such collateral pledge of security as may have been issued therewith. * * * "

If plaintiff and intervener are right in their contention they have been guilty of a violation of this law. They do not appear to be in position to invoke equitable relief against the banking department, now having charge of the Sioux Falls Bank. The courts ought not to give judicial sanction to a transaction in direct violation of the banking laws of the state. To do so would only tend to nullify the restrictions intended for the protection of the public, and render official supervision of banks difficult, if not impossible. The set-off asked will not be allowed under the circumstances of this case. If the Ahnberg Bank is the primary debtor, let it discharge that obligation without the aid of a court of equity.

[6] The only remaining question before us is the contention of plaintiff and intervener that the note has been paid. To support

this claim of payment M. E. Holman says that he went to the Sioux Falls Bank in January, 1924, and asked to have that bank charge the amount due upon the note to him. He was informed that the note was in a Minneapolis bank as collateral security, but he claims that the officer of the Sioux Falls Bank promised to charge the account at once and to get the note from Minneapolis. If this promise was made it was not kept. The note at the time was not due and was in the hands of an indorsee, who was not bound to accept payment and who did not agree to do so. Such agreement did not constitute a legal payment of the note.

The judgment and order appealed from are reversed, with direction to the trial court to dismiss the complaints of plaintiff and intervener and enter judgment in favor of defendants upon the counterclaim.

CAMPBELL, J., concurs in the result.