JACOBSON, Appellant, v. RUDEN, Superintendent of Banks, et al, Respondents.

(244 N. W. 363.)

(File No. 7387. Opinion filed October 4, 1932.)

*Blaine Simons,* of Sioux Falls, for Appellant.
*Bielski & Elliott,* of Sioux Falls, for Respondents.

RUDOLPH, J. In 1924 the Rowena State Bank became involved, and it was necessary that the bank increase its cash reserve. The plaintiff, Jacobson, who was chairman of the board of directors, and other directors of the bank, borrowed $5,000

from the Minnehaha National Bank of Sioux Falls, and immediately placed this money to the credit of the Rowena bank for its use and benefit. The Rowena bank, prior to the time it closed, had paid $2,500 of this $5,000 borrowed by the directors, and the plaintiff has paid the balance. In 1927 the cash reserve in the Rowena bank again became depleted, and the plaintiff, who was then president of the bank, proceeded to personally borrow $15,000, which was placed at the disposal of the Rowena bank. Of this sum $5,000 was placed to the plaintiff's credit in the bank, and $10,000 was used by the bank to pay operating expenses and to charge out certain purported assets held by the bank. At the time of this second transaction, the plaintiff took from the Rowena bank notes of the face value of approximately $15,000. These notes were left with the cashier of the bank. The plaintiff collected $1,300 from these notes, which he has retained. Of the original notes taken by the plaintiff, notes of the face value of $6,450 remain uncollected, and these, together with additional notes of the face value of $2,250, exchanged by the bank for other notes of that amount originally held by the plaintiff, are in the possession of the plaintiff. The Rowena bank did not issue any bills payable on account of either the $5,000 or the $15,000 that it received. After these transactions occurred, the Rowena bank made and published several called reports of the condition of the bank, all of which were attested by the plaintiff as director of the bank, and none of the reports showed the transactions above referred to. These transactions were not, in any manner, reported to the superintendent of banks. The bank failed, and the plaintiff, within the time required by law, presented and filed his claim with the superintendent of banks in the sum of $2,500, as a result of the first transaction, and in the sum of $2,250, as the result of the second transaction, which claims were rejected and disallowed by the superintendent of banks. The amount of the claim arising out of the second transaction is determined by the plaintiff as follows: Of the original $15,000 that he placed to the credit of the bank, he received credit, as a deposit in the bank, for the sum of $5,000. This amount has been deducted from the $15,000, and a claim therefor has been allowed by the superintendent of banks. Of the $10,000 remaining, the plaintiff has collected $1,300 and holds notes, which he originally took from the bank, in the sum of $6,450, making a total

of $7,750, which he has deducted from his claim. The remaining $2,250 is the amount of the claim that he asks be allowed as against the bank, and which was rejected by the superintendent. The plaintiff brought this action against the superintendent of banks, now in charge of the Rowena State Bank, and asked that his claims, arising out of the two transactions, be adjudged to be valid and subsisting claims against the Rowena bank, and that he have judgment against the bank for the amounts claimed. The trial court found the facts substantially as above set forth, and concluded, as a matter of law, that the plaintiff was not entitled to a claim against the bank on account of either transaction. Judgment was entered against the plaintiff, and from the judgment and order denying a motion for a new trial plaintiff has appealed. This case was submitted below upon the theory that the transactions involved constituted loans made by the appellant to the Rowena bank.

Section 8984, R. C. 1919, provides, in part, as follows: "In all cases where money is borrowed a bank shall issue its 'bills payable' and shall show the true amount of borrowed money on its books, and in all reports and statements required by the provisions of this chapter, under 'bills payable.' "

The appellant relies, to a great extent, upon the case of Gold-Stabeck Loan & Credit Co. v. Security State Bank et al, decided by this court in 1916 and reported in 37 S. D. 239, 157 N. W. 660. However, since the decision of that case, this court has had before it for consideration said section 8984 on several different occasions. In the case of Holman v. Commercial & Savings Bank, 50 S. D. 524, 210 N. W. 730, 731, this court said, referring to said section:

"While a bank may borrow money, it may not legally do so, except with certain formalities. Section 8984 provides: 
" ' * * * In all cases where money is borrowed a bank shall issue its "bills payable" and shall show the true amount of borrowed money on its books, and in all reports and statements required by the provisions of this chapter, under "bills payable."
* * *' "

Again, in the case of Bon Homme County Bank v. Dakota National Bank, 50 S. D. 191, 208 N. W. 825, 827, the following

language is pertinent: "It [the transaction] is illegal, but in a suit brought on behalf, and in the name, of the other party to the illegal * * * transaction, there can be no recovery in favor of one co-conspirator against the other."

The said section of our Code was again before this court in the recent case of Smith v. First National Bank of Sherman, 239 N. W. 842, 846, wherein it was said:

"The statute provides that a bank may borrow money for temporary purposes and may pledge a limited amount of assets as collateral security therefore, but as part and parcel of the same statute it is provided that when money is borrowed the borrowing bank shall issue its bills payable and shall show the true amount of borrowed money on its books, etc. None of these requirements were met in the instant case. * * * Appellant was chargeable with knowledge of the statute. If appellant desired to loan money to the Farmers' Bank and hold assets in pledge for the loan, it should have proceeded to make the loan in the manner and form contemplated by the statute.

"We are therefore of the opinion that the entire transaction with reference to the pledging of the collateral in question was illegal and within the prohibition (and without the permission) of section 8984, Rev. Code 1919, as amended."

■■ These last cases quite definitely, in our opinion, establish that a loan is illegal when made to a bank without the bank issuing its "Bills Payable," as required by section 8984. The loan being illegal, there can be no recovery on the loan as such. Can there be a recovery upon quantum meruit? The plaintiff, from before the time the first transaction occurred until the closing of the bank, was an officer and director of the bank. The statute (section 8984, as amended by chapter 53, Laws of 1927) provides: "Any individual banker, officer, employee, or director of any bank, who shall violate any of the provisions of this Act, or who shall fail to comply with any requirement of this Act * * * shall be deemed guilty of a misdemeanor."

The relief, therefore, which the plaintiff is here asking in a court of equity, is bottomed, first, upon an illegal contract, and, second, upon his own acts which, under the statute, he being an officer and director of the bank, constitute a violation of a penal

law. To allow a recovery in this case upon the theory of quantum meruit would, in our opinion, destroy the real purpose and object of the law, and sanction acts of the plaintiff which are illegal and contrary to the legislative policy announced by the statute. This court in the case of Norbeck & Nicholson Co. v. State of South Dakota, 32 S. D. 189, 142 N. W. 847, 849, Ann. Cas. 1916A, 229, said: "Illegality of contract, arising from express prohibition of law based on public policy, renders the contract wholly null and void for any purpose, and precludes a recovery on an implied contract or on the quantum meruit; otherwise a means would be thereby furnished for the undoing of the law itself."

The federal cases relied upon by appellant conclude that the contracts there concerned (under the statutes therein involved) were not illegal; this court having held under our statute that the contract is illegal, these federal cases are not helpful.

The judgment and order appealed from are affirmed.

CAMPBELL, P. J., and POLLEY, ROBERTS, and WARREN, JJ., concur.