# Richmond

## FIRST NATIONAL BANK OF DANVILLE V. N. E. CLEMENTS AND WILLIAM H. CARTER, RECEIVERS OF·THE CHATHAM SAVINGS BANK.

March 14, 1935.

Present, All the Justices.

The opinion states the case.

*Harris, Harvey & Brown,* for the appellant.

*John W. Carter, Jr.,* and *Rutledge C. Clement,* for the appellees.

GREGORY, J., delivered the opinion of the court.

The receivers instituted a suit in equity against the First National Bank, the purpose of which was to have the court declare illegal and void a certain loan of $20,000 made by the First National Bank to the Chatham Savings Bank because, as the receivers claimed, the loan was made in violation of section 4149 (50) of the Code. The court by its decree sustained the contention of the receivers and held the loan invalid, but permitted the First National Bank to offset against said $20,000 the sum of $6,561.83, the amount the Chatham Savings Bank had on deposit in the First National Bank at the time of the receivership, and allowed the latter bank to assert as a general creditor against the receivers a claim for $13,438.17, which is the difference between the loan of $20,000 and the amount on deposit to the credit of the Chatham Savings Bank of $6,561.83. The claim of the First National Bank as a general creditor was, by the decree, reduced by dividends declared by the receivers to $8,553.04, for which the court rendered a judgment against the First National Bank. Both the appellants and the appellees are complaining of the decree.

The proper construction of Code, section 4149 (50), and whether the Chatham Savings Bank complied therewith, will be determinative of the questions in issue here. The section reads as follows:

"Any bank or trust company borrowing money or rediscounting any of its notes shall at all times show on its books and accounts and in its reports the amount of such borrowed money or rediscounts. No officer or director or employee of any bank or trust company shall issue the note of such bank or trust company for borrowed money nor rediscount any note nor pledge any of the assets of such bank or trust company, except when authorized by resolution of the board of directors of such bank or trust company previously made and entered upon the minutes of such bank or trust company, under such rules and regulations and in such form as may be prescribed by the chief ex-

aminer of banks; provided, it shall be unlawful for any bank or trust company to issue its certificates of deposit for the purpose of borrowing money."

On the 11th day of November, 1930, the president of the Chatham Savings Bank, on its behalf, executed a collateral note to the First National Bank for $20,000 for the purpose of borrowing that amount, and at the same time delivered to the First National Bank, along with the note and as security therefor, collateral of the face value of $25,851.31, consisting of notes due the Chatham Savings Bank. The $20,000 was placed in the assets of the Chatham Bank and used for its purposes. On November 29, 1930, the president of the First National Bank called upon the Chatham Savings Bank for additional collateral and obtained, as such, a note due the latter bank for $5,150. On that same day the bank's doors were closed and later the receivers were appointed.

There was no resolution of the board of directors of the Chatham Savings Bank expressly designating the First National Bank as the institution from which the $20,000 was to be borrowed. There are, in all, copies of four resolutions in the record. The first one bears date of July 1, 1927, and in it the State Planters' Bank and Trust Company of Richmond is designated as the bank from which the money was to be borrowed and the assets pledged as security therefor. It is observed that this resolution did not limit the amount to be borrowed. No definite sum was named and no fixed amount of collateral was specified and directed to be pledged.

The second resolution was of July 6, 1928, and authorized the borrowing of $75,000 from the American National Bank of Richmond. It provides for no definite amount of collateral to be pledged.

The record does not show how much was borrowed under these two resolutions. It does not show that any amount was borrowed under them.

The next two resolutions of May 4, 1929, are claimed by the appellant as authority for the loan and the pledging of

the collateral which is now before us. One of these resolutions authorized a loan from the State Planters' Bank and Trust Company up to $100,000, while the other one authorized a loan up to $100,000 from the American Bank and Trust Company. Sixty thousand dollars was borrowed under each of these resolutions from each of the named banks. Unexecuted authority remained under each resolution for the loan of $40,000 or $80,000 under both resolutions. This was the condition of affairs, in so far as these particular resolutions were concerned, when on November 11, 1930, the $20,000 was borrowed from the appellant.

When the Chatham Savings Bank failed it had on deposit with the First National Bank the sum of $6,561.83, which, together with the collections the latter bank made of the collateral, paid off the $20,000 loan in full, and on June 23, 1931, the excess collateral, amounting to more than $17,000, was delivered to the receivers.

On November 29, 1930, when the last collateral note of $5,150 was obtained by the president of the First National Bank, a conference of bankers had been called for the next day in Richmond looking to the consolidation of the Chatham Savings Bank with another bank in order to prevent its failure.

The cause was heard upon its merits and the court entered the decree complained of, filing with the record an opinion in writing.

The receivers earnestly contend that the loan was made and the collateral given to secure the same without any resolution of the board of directors authorizing it as is provided for in Code, section 4149(50); that the whole transaction was made in direct contravention of said section and therefore it was void. Cross-error is assigned by them to that portion of the decree which permits the First National Bank to assert its claim as a general creditor and to that portion of the decree which permits said bank to offset the amount the Chatham Savings Bank had on deposit with it.

The First National Bank contends that Code, section

4149 (50), was substantially complied with, and that the two resolutions of May 4, 1929, which were passed by the board of directors, were sufficient to authorize the loan; that if the resolutions did not authorize the loan and the pledging of the assets, the transaction at most would be merely voidable and not void. It is also contended that if the transaction was not authorized it still would be binding on the receivers; that they are estopped to deny the validity of the loan and pledge because the bank received and used the full $20,000 while it was a going concern and it and its creditors received the benefits thereof; that the receivers stand in no better position than the bank itself and that the First National Bank should be allowed to offset its debt in full against the original debt of $20,000 due it by the Chatham Bank because the receivers are seeking a money judgment against it.

The controlling facts have been stated. There is no serious controversy about them. The controlling issue in the case, as has been stated, involves the construction and application of Code, section 4149 (50), and whether the Chatham Savings Bank complied with its terms. Counsel have filed illuminating and comprehensive briefs in which numerous cases are cited and relied upon and the argument has assumed lengthy proportions, but, after all, the decision of the case must ultimately rest upon the proper interpretation of the statute and whether it has been complied with. It will not be practical to discuss all of the cases referred to. All of them are directly or indirectly in point. The courts of other States have differed in their construction and application of similar statutes under somewhat similar facts.

The language of Code, section 4149 (50), is plain and unambiguous. The legislative intent is manifest. No construction of such language as, "No officer * * * of any bank * * * shall issue the note of such bank * * * for borrowed money * * * nor pledge any of the assets of such bank * * * except when authorized by resolution of the board of directors of such bank * * * previously made and entered

upon the minutes of such bank * * *," is necessary. The meaning and intent is clear. The statute carries into effect a very definite public policy. It was highly desirable, of vital public interest and for the protection of the public that it be required of the officers of a bank, as a condition precedent to the negotiation of loans and the pledging of assets, that the board of directors first authorize the transaction by a resolution spread upon the minute books. The evil sought to be remedied was to prevent the borrowing and pledging of assets by the officers of a bank without the knowledge and assent of the directors. Thus it would tend to prevent fraud on the part of the officers of a bank, such as rendering false statements, committing thefts and fraudulently pledging the bank's assets. Where a resolution is required as a prerequisite for a loan and the use of bank assets as collateral, the responsibility is placed upon the board of directors rather than upon one officer, usually the cashier. The statute is reasonable. It protects banks against the unauthorized acts of its officers. However, its terms are general. It neither carries a penalty for its violation nor any provision for its enforcement. It does not provide that the name of the lending bank be designated in the resolution of the board of directors; nor is it required that any definite amount to be borrowed be specified; nor is the amount of collateral to be pledged as security for the loan required to be specified. The naming of the bank from which the money is to be borrowed not being required by the statute to be set out in the resolution, the fact that a bank has been named therein will not invalidate an otherwise valid resolution. The name of the bank may be treated as surplusage. A resolution of the board of directors, in general terms, authorizing the officers to borrow money and pledge bank assets as security therefor, previously adopted and spread on the minute book, is all that is required.

Do the resolutions of May 4, 1929, authorize the loan from the appellant and are they in substantial compliance with the statute? If the State Planters' Bank and Trust Company had not been named in one and the American

Bank and Trust Company named in the other, there could have been no doubt as to the sufficiency of either as authority for the $20,000 loan from the First National Bank. Then are we to hold the resolutions invalid in so far as the loan here is concerned simply because a bank other than the appellant bank is named in them? Our conclusion is that the resolutions were sufficient under the statute to authorize the loan here involved.

Courts of other States have construed statutes somewhat similar to the Virginia statute. However, we have not found a statute of any State expressed in the same language as ours. The courts, in the cases referred to, have taken different views of such statutes.

In Louisiana the act (Act La. No. 97 of 1921, section 4) required the resolution of the directors to "specify the maximum amount to be borrowed from any one bank or person, as well as the maximum amount to be borrowed altogether and shall likewise fix the maximum amount of collateral to be pledged therefor * * *." In *Sibley State Bank* v. *Exchange Nat. Bank,* 159 La. 214, 105 So. 294, the resolution failed to either fix the amount of collateral to be pledged for the security of the loan, or to specify the maximum amount to be borrowed. It was urged that for these omissions the loan and the pledging of collateral were invalid, but the court held that the lending bank acted in good faith and that there had been a substantial compliance with the statute. The transaction was upheld.

In *Grand Nat. Bank* v. *Taylor,* 176 Ark. 1, 1 S. W. (2d) 818, the court held that, where the borrowing bank had received the proceeds of the loan and used it in its general banking business, only a substantial compliance with the statute was required.

In *Hardy* v. *People's State Bank,* 185 Wis. 446, 201 N. W. 725, the statute required that the resolution should designate the bank from which the loan was to be obtained and to specify the amount to be borrowed. Two officers were required to be named to sign the note. The loan was obtained and used by the bank in its business. It was con-

tended that the transaction was invalid because it was not properly authorized by the resolution; that the resolution failed to name the lending bank, and failed to state the amount to be borrowed or designate the two officers to sign the note. The court held the transaction legal and binding.

Loans obtained under somewhat similar circumstances were upheld as not violative of statutes in the cases of *Schramm* v. *Bank of California,* 143 Or. 546, 20 Pac. (2d) 1093, 1095, 23 Pac. (2d) 327, and *State ex rel. Davis* v. *Farmers' State Bank,* 112 Neb. 597, 200 N. W. 173.

But a contrary holding is found in numerous cases. See the cases of *Union Nat. Bank* v. *Lyons,* 220 Mo. 538, 119 S. W. 540; *Bank of Kirksville* v. *Sloop,* 198 Mo. App. 225, 200 S. W. 72, 73; *Sims, Examiner* v. *Athens Bank,* 139 La. 324, 71 So. 525; *Thomas* v. *Marine Bank & Trust Co.,* 157 La. 459, 102 So. 524; *Smith* v. *First Nat. Bank,* 59 S. D. 320, 239 N. W. 842; *Holman* v. *Commercial & Savings Bank,* 50 S. D. 524, 210 N. W. 730; *Jacobson* v. *Ruden,* 60 S. D. 285, 244 N. W. 363; *State* v. *Corning State, etc., Bank,* 136 Iowa 79, 113 N. W. 500.

On account of the peculiar language of the Virginia statute, the cases referred to afford little assistance here, because, as already stated, they construe and apply statutes that are quite different from the Virginia act.

In Virginia a bank has the power to borrow money and pledge its assets. (Code, section 4149(13).) The statute here involved is not a grant of power to the banks to borrow. It is a limitation upon that power. The power of a bank to borrow is not involved here. Neither is the question of a bank giving security for deposits involved. The only question here for decision is whether the bank complied with the statute.

In the case at bar the First National Bank in making the loan and taking the collateral acted in absolute good faith. It loaned $20,000 to the Chatham Savings Bank and the latter bank used the money in and about its general banking business. Whatever benefits may have accrued to the Chatham Bank by reason of its receipt and use of the

$20,000 will enure to the benefit of its creditors and depositors. The bank's cash assets were increased to that extent while its securities were diminished to the same extent. The pledging of the collateral amounted to no more than an "exchange of equivalents," as is expressed in *Hardy* v. *People's State Bank, supra.* If the loan and pledge here were declared illegal, the creditors of the Chatham Savings Bank would be unjustly enriched, when, as was said by the trial court, they are entitled only to be protected.

The decree should be reversed and a final decree entered here in favor of the First National Bank of Danville, dismissing the bill filed by the receivers.

*Reversed and dismissed.*