Argued October 9, reversed November 10, 1914.

## SARGENT v. OREGON SAVINGS & LOAN CO.

### (144 Pac. 455.)

**Banks and Banking — Statutory Regulation — "Bank or Banker" — "Banking Business"—"Order."**

1. A savings and loan company, issuing bonds by which it agreed to pay to the order of the obligees, at a specified time, a sum equal to all payments made thereon, with interest compounded semi-annually, and, in the case of a certain class of bonds, the *pro rata* share of the net earnings of bonds in that class, with the right to the holder to withdraw all money paid, without interest, or with interest at different rates, dependent on the time that elapsed before the withdrawal, was subject to Section 4563, L. O. L., providing that any person, firm or corporation having a place of business within the state, where credits are opened by the deposit or collection of money, currency or negotiable paper, subject to be paid or remitted upon draft, receipt, check or order, shall be regarded as a "bank or banker" and as doing a "banking business," since, while it was not its purpose to engage in a general banking business, the exercise of any single function falling within the statutory definition will suffice, and the

bonds, being assignable by their terms, possessed the attributes of an "order," which as commonly understood is something in the nature of a bill payable in money or its equivalent, but in a more extensive sense includes a direction or request to pay over money or other things deposited to the credit of the drawer.

[As to the duties of savings banks to their depositors, see note in 105 Am. St. Rep. 728.]

From Marion: WILLIAM GALLOWAY, Judge.

This is a suit for an injunction by S. G. Sargent, Superintendent of Banks of the State of Oregon, against the Oregon Savings & Loan Company, a corporation. The Circuit Court rendered a decree for the defendant on demurrer, and plaintiff appeals.

REVERSED.

For appellant there was a brief over the names of *Mr. Joseph A. Benjamin,* Second Assistant Attorney General, *Mr. Andrew M. Crawford,* Attorney General, and *Mr. James W. Crawford,* Assistant Attorney General, with an oral argument by *Mr. Benjamin.*

For respondent there was a brief and an oral argument by *Mr. E. J. Adams.*

Department 2. MR. JUSTICE McNARY delivered the opinion of the court.

In his official capacity as superintendent of banks, Mr. S. G. Sargent brings this suit to restrain defendant from engaging in the business of banking without first having complied with the statutes relative thereto. It is conceded that the only problem for judicial solution concerns the construction to be placed on the contracts or bonds which defendant is desirous of issuing to its prospective customers. Stated more directly, the inquiry is: Do the terms of the contract or bond bring the transaction within the operation of Section 4563, L. O. L.?

"Any person, firm, or corporation (except national banks) having a place of business within this state where credits are opened by the deposit or collection of money or currency or negotiable paper subject to be paid or remitted upon draft, receipt, check, or order, shall be regarded as a bank or banker, and as doing a banking business under the provisions of this act.''

The sufficiency of the complaint was challenged by a demurrer. The Circuit Court sustained the attack; hence this appeal.

To unfold understandingly the essential nature of the controversy impels both an exposition and analysis of the contracts, which are *in extenso* as follows:

"Class F.          6 Per Cent Guaranteed.          No. 2.
          "Irregular Payment Profit-Sharing Bond.

"Know all men by these presents that, in consideration of the payments entered herein, the Oregon Savings & Loan Company, of Eugene, Oregon, hereby agrees to pay to the order of ——, of ——, his, her, or their heirs, representatives, or assigns, six years after date hereof, a sum equal to all the payments made hereon, together with interest thereon at the rate of 6 per cent per annum, compounded semi-annually, and the *pro rata* share of all the net earnings of the bonds in this class.

"It is understood and agreed that all the money paid on this bond may be withdrawn at any time without interest if before six months; and with interest at the rate of 4 per cent per annum if after six months, and with interest at the rate of 6 per cent per annum if after one year from the date of payment.

"It is also agreed that moneys paid hereon may be withdrawn only upon presentation of this bond by the owner thereof or his legal representative, and should the bond be presented for payment by another than the person to whom it is issued, the Oregon Savings & Loan Company may take such reasonable time as may be necessary to assure itself that the party presenting it is lawfully entitled to receive payment.

"It is also understood and agreed that this bond, with the interest and profits, is payable on demand out of any funds on hand at the time of such demand not set aside for loans actually made.

"It is also further understood and agreed that under all ordinary conditions the money kept on hand and the moneys coming in from loans and bonds will be sufficient to pay all withdrawal demands promptly, but that, should any extraordinary conditions arise, when the funds on hand are not sufficient to pay instantly any demand, the said Oregon Savings & Loan Company may require notice of withdrawal, which notices shall be filed and paid in the order received and filed, from the first moneys coming in, and no dividends shall be paid or new loans made until such withdrawal demands are paid in full.

"It is also further understood and agreed that, in consideration of the profit-sharing features of this bond, no part of the payments made hereon less than the whole can be withdrawn on demand, but the owner of this bond may borrow any amount not exceeding the total amount paid hereon out of any funds on hand available for loans, for such time as he may desire, pledging this bond as security for the payment of such loan and paying the rate of interest then prevailing on real estate loans.

"In witness whereof, the Oregon Savings & Loan Company has caused this bond to be executed by its president and secretary, under express authority of its board of directors, and its corporate seal affixed this —— day of ——, 191—.    [Seal.]    [Signatures.]"

"Class G.        6 Per Cent Guaranteed.        No. 2.
"Irregular Payment Bond.

"Know all men by these presents that, in consideration of the payments entered herein, the Oregon Savings & Loan Company, of Eugene, Oregon, hereby agrees to pay to the order of ——, of ——, his, her, or their heirs, representatives, or assigns, on or after one year from the date of this bond, a sum equal to all the payments made hereon, less all amounts withdrawn,

together with interest thereon at the rate of 6 per cent per annum payable semi-annually on the first days of January and July of each year. All payable at the office of the Oregon Savings & Loan Company, at Eugene, Oregon.

"It is understood and agreed that any or all of the money paid on this bond may be withdrawn at any time without interest if before six months, and with interest at the rate of 4 per cent per annum if after six months and under one year from the date of payment.

"It is also agreed that moneys paid hereon may be withdrawn only upon presentation of this bond by the owner thereof, or his legal representatives, and should the bond be presented for payment by another than the person to whom it is issued, the Oregon Savings & Loan Company may take such reasonable time as may be necessary to assure itself that the party *presenting it* is lawfully *entitled* to receive payment.

"It is also understood and agreed that this bond with the interest thereon is payable on demand out of any funds on hand at the time of such demand, not set aside for loans actually made. It is also further understood and agreed that under all ordinary conditions the money kept on hand and the money coming in from loans and bonds will be sufficient to pay all withdrawal demands promptly, but that should any extraordinary conditions arise when the funds on hand are not sufficient to pay instantly any demands, the said Oregon Savings & Loan Company may require notice of withdrawal, which notice shall be filed and paid in the order received and filed, from the first moneys coming, and no dividends shall be paid or new loans made until such withdrawal demands are paid in full.

"In witness whereof, the Oregon Savings & Loan Company has caused this bond to be executed by its president and secretary under express authority of its board of directors, and its corporate seal affixed this —— day of ——, 191—. [Seal] [Signatures.]"

Counsel for defendant argues that transacting business in the manner outlined in the contracts does not

constitute a banking business as defined by the section of the statute heretofore quoted.

It is admitted that the police power of the state takes a wide range in the regulation of the banking business, and that the statutory definition found in Section 4563, *supra,* does not offend against any constitutional inhibition. Having the power to regulate, the state may impose such restraints as may seem best calculated to conserve the pecuniary interests of its citizens. The fundamental purpose of regulating the banking business is to insure the safety of deposits. The state, as guardian of the public interests, is legitimately concerned in the strength and integrity of the banking institution engaged in business within its confines, and should carefully guard all the restraints which the wisdom of the legislature has devised for individual and public security. So, if defendant is exercising any one or more functions falling within the wording of the statute, that business must conform to the regulations prescribed by statute.

It is not necessary for us to go to the lexicographers or legal writers to determine what constitutes banking, or to obtain the accepted definition of a bank, as the statute relieves us of that duty. It is obvious from the reading of the contracts proposed to be issued by defendant, that the central purpose of defendant is not to engage in a general banking business; but it is not required that defendant transact the various kinds of business enumerated in the statute in order to be a bank within the purview of the statute. The exercise of any single function falling within the statutory definition will suffice: 1 Michie, Banks and Banking, p. 11.

Applying the legislative definition to the contracts or bonds in question, we observe that defendant is a

corporation having a place of business within the
state; that it proposes to open credits with its patrons
by the deposit of money subject to be paid, remitted
or withdrawn at stated intervals of time upon the
presentation of the bond which is issued to the cus-
tomer at the time of the deposit of the money. True
it is that the statute does not include the words
"bond" or "contract," yet this is not essential when
the medium by which the money on deposit is with-
drawn is included within the description of the instru-
ments contained in the statute. The word "order"
may well include the bond issued by defendant as evi-
dence of its indebtedness to the depositor, as by its
very terms it is made assignable and possesses the
attributes of an order having for its purpose the pay-
ment of money. As commonly understood, an order is
something in the nature of a bill, payable in money or
its equivalent; but in a more extensive sense it in-
cludes a direction or request to pay over money or
other things deposited to the credit of the drawer:
*Leslie* v. *State,* 10 Wyo. 10 (65 Pac. 849, 69 Pac. 2);
*People* v. *Smith,* 112 Mich. 192 (70 N. W. 466, 67 Am.
St. Rep. 392); *State* v. *Nevins,* 23 Vt. 519; 29 Cyc.
1509.

The necessity for the regulation of corporations
conducting the character of business in which defend-
ant proposes to engage is just as apparent as it is in
the case of a regular banking institution. By the
terms of the bonds under consideration, defendant
proposes to receive deposits from all persons desiring
to patronize its plan of operation. The patron may
at any time withdraw his deposits, but in doing so he
relinquishes his right to interest if the withdrawal
occurs within six months; after that time he is entitled
to interest at a graduated rate, dependent upon the

length of time his deposits remain with defendant. We can discern no difference in the situation of a customer who deposits money in an institution which has failed, whether it be in a bank doing a general banking business, where money is left on deposit subject to check, and in a commercial institution, where money is deposited subject to be withdrawn upon the surrender of an instrument, whatever may be its character.

While the record is nude of any fact pointing to a want of solvency in defendant, yet its scheme or plan of operation falls within the regulative embrace of the statute, and therefore it must conform to the law as completely as though its engagement was to operate a bank in the sense in which it is commonly understood.

From these deductions, we are forced to conclude that the Circuit Court erred in its judgment, and that the decree must be reversed.                REVERSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE RAMSEY concur.

MR. JUSTICE BEAN taking no part in the consideration of this case.