HARDY, Trustee, Respondent, vs. PEOPLE'S STATE BANK OF
     LANCASTER and others: PARKER, Commissioner of
     Banking, Appellant.

*December 10, 1924—January 13, 1925.*

*Banks and banking: Borrowing money: Note and mortgage given
in violation of statute: Validity.*

Although sec. 221.33, Stats., makes it unlawful for a bank to
   borrow money except upon action by the directors and reso-
   lution spread upon the minutes, a note and a mortgage on the
   bank building, given as security for money which was bor-
   rowed and used for the legitimate business of the bank, are
   not void, the statute revealing no legislative purpose or intent
   to avoid a contract made in violation thereof, but having
   been intended to apply to the management of the internal
   affairs of the bank.  p. 447.

APPEAL from a judgment of the circuit court for Grant
county: S. E. SMALLEY, Circuit Judge.  *Affirmed.*

For the appellant there was a brief by *Brennan & Car-
thew* of Lancaster, and oral argument by *Harry E. Carthew.*

For the respondent there was a brief by *George F. Frantz*
of Fennimore and *Kopp & Brunckhorst* of Platteville, and
oral argument by *Mr. Arthur W. Kopp* and *Mr. Frantz.*

OWEN, J.   This action was brought by the plaintiff to
foreclose a mortgage executed to him as trustee by the *State
Bank of Lancaster* just a few days before the state banking
commissioner took possession of the bank as an insolvent
institution.   The resources of the bank had been seriously
impaired by embezzlement on the part of the active officers
of the bank, the cashier and the vice-president.   On May 27
or 28, 1923, in an effort to raise money, Pugh, the cashier,
went to Chicago and called upon *William Hardy,* an old
business associate, and implored him to negotiate a loan on
behalf of the bank in the sum of $10,000.   *Hardy* is a
banker at Hillsdale, Illinois.   He induced a patron of his

bank to loan the *State Bank of Lancaster* $10,000, to be secured by a real-estate mortgage upon the bank building. The proceeds of the loan were deposited to the credit of the *Lancaster Bank* in the National City Bank of Chicago, which bank was the Chicago correspondent of the *Lancaster Bank,* and it was used in paying drafts drawn upon that bank by the *Lancaster Bank* in the usual course of business.

The foreclosure action is resisted by the commissioner of banking on the ground that the note and mortgage given to secure the loan is void, because a resolution stating the amount of the loan, naming the bank from which it shall be borrowed, and designating two officers to sign the promissory note evidencing such debt was not adopted by the board of directors nor spread of record in the minute book of the bank, as required by sec. 221.33, Stats. The principal question before us is whether the failure of the directors to adopt and record such a resolution makes the note and mortgage void. That portion of sec. 221.33 which is material here reads as follows:

"It shall be unlawful for any bank to borrow money unless a resolution stating the amount, naming the bank from which it shall be borrowed, and designating two officers to sign the promissory note evidencing such debt, shall have been duly adopted by the board of directors and spread of record in the minute book."

The briefs of counsel take a wide range and exhaustively review the prior decisions of this and other courts dealing with the effect of similar statutory provisions upon contracts entered into in violation thereof. We do not deem it necessary to follow counsel in their exhaustive investigation, because we readily come to the conclusion that the statutory provision here under consideration reveals no legislative purpose or intent to avoid a contract made in violation thereof.

Ch. 221 of the Statutes, of which the provision above quoted forms a part, relates exclusively to state banks and prescribes many regulations, all calculated to promote safe

banking, the solvency of the institution, and to enable the commissioner of banking to intelligently and expeditiously examine the affairs of the bank. It will be noted that the statute does not condemn the contract nor declare that it shall be either void or voidable. It simply says that it shall be unlawful for the bank to borrow money unless a resolution is duly adopted and recorded in the minute book. The penalty for such a violation would seem to be provided in sec. 221.41, which provides:

"If the board of directors or a quorum thereof or any committee of such board of any bank shall knowingly violate or knowingly permit any of the officers, agents or employees of the bank to violate any of the provisions of this chapter, such directors shall jointly and severally be liable for the amount of the loss sustained by the bank; and if after a warning from the commissioner of banking they shall fail to make good any loss or damage resulting from such acts, or continue such conduct, it shall constitute a ground for the forfeiture of the charter of such bank, and it shall thereupon be the duty of the commissioner of banking to institute proceedings to enforce such forfeiture and to secure a dissolution and a winding up of the affairs of such bank."

We deem it clear that the regulation was intended to apply to the management of the internal affairs of the bank, violation of which furnishes grounds for the forfeiture of the charter of the bank. The act is unlawful, but the penalty therefor is visited upon those responsible for the violation and not upon the one who in good faith loans his money to the bank. It would be a harsh rule, indeed, to permit a bank to borrow money and, after enjoying the benefit thereof, to plead its own violation of law as a defense to its repayment. Such a law might well be entitled: "A law to enable a bank to fleece the credulous and unwary." This is not a case where a bank has loaned its credit to the detriment of its creditors. It was simply an exchange of equivalents. It received and enjoyed the proceeds of the loan.

There is nothing to indicate collusion between the plaintiff or his *cestui que trust* and the active officers of the bank, nor is there anything to show that the money received was not used for the legitimate business of the bank. It resulted in no preference to creditors, and there appears to be no reason in either law or morals why plaintiff should be denied the remedy he seeks.

Some questions of practice are raised by the appellant which it is unnecessary to discuss. They have been considered but deemed not well taken. Their treatment seems unnecessary.

*By the Court.*—Judgment affirmed.