Argued January 24; reversed April 11; rehearing denied
July 5, 1933

# SCHRAMM *v.* BANK OF CALIFORNIA,
# NATIONAL ASSOCIATION

(20 P. (2d) 1093, 23 P. (2d) 327)

*John P. Winter,* of Portland (Winter & Maguire and Wilson & Reilly, all of Portland, on the brief), for appellant.

*Thomas G. Greene,* of Portland, for respondent.

ROSSMAN, J. The Bank of Kenton was incorporated under the laws of this state in the year 1909, and until December 2, 1926, when insolvency forced it to discontinue business, continuously conducted a commercial and savings bank business in a suburb of Portland. Its capitalization was $66,000, and its deposits approximately $1,000,000.

The defendant, which is a national bank with its principal place of business in San Francisco, has a branch located in the business district of Portland. In 1919 the Kenton bank opened a checking account with the defendant which continued until the Kenton bank discontinued business. According to the defendant's brief, "this account differed in no respect from the ordinary and usual commercial checking accounts of individuals". The Kenton bank also borrowed money from the defendant. During 1926 it made twenty-seven borrowings ranging in amount from $2,500 to $50,000, and aggregating a total of $536,000. In each instance the loan was evidenced by a note. October 31, 1919, the Kenton bank, in anticipation of incurring indebtedness in favor of the defendant, signed the following document addressed to the defendant:

"In anticipation of becoming indebted to you by way of loans on promissory notes or overdraft, or both, and as a continuing security to you in consideration of the credit created to us or others for whom I may be endorser, guarantor or maker, by you, we, hereby stipulate and agree that all promissory notes, bills of lading, shipping or warehouse receipts, bonds, bills, stocks, or other personal property or choses in action

now assigned, hypothecated to or otherwise deposited with you or in your possession or which may at any time hereafter be so assigned, hypothecated, deposited or placed in your possession by us or any one representing us shall be held by you as collateral security for any and all indebtedness from us, or others as aforesaid, either created or existing at the time of the deposit of such security or prior or subsequent thereto, and we hereby constitute and appoint the manager of The Bank of California, N. A., or his successor in office our attorney    *    *    *.''

Whenever the Kenton bank borrowed money from the defendant it made a pledge of collateral taken from its assets, unless the defendant already possessed sufficient collateral to secure payment of the loan. On November 19, 1926, the Kenton bank owed the defendant $23,500 on account of borrowed money, and the defendant held as security collateral belonging to the Kenton bank of the face value of $76,150. On November 22 the Kenton bank borrowed from the defendant an additional $40,000, thus increasing its indebtedness to $63,500, and at the same time pledged with the defendant an additional $18,000 of collateral, thus making its total pledge $94,150. On November 23 the defendant credited the Kenton bank with $3,026 paid on account, thereby reducing the Kenton bank's debt to $60,474, and on the same day the Kenton bank delivered to the defendant $27,770 more collateral, which thereby increased the collateral to $121,920. Later in the day $7,500 of collateral was returned to the Kenton bank which reduced the amount to $114,420. On November 24 there was paid to the defendant $14,033.87 which reduced the Kenton bank's debt to $46,440.13. On the same day $18,000 of collateral was released by the defendant, thereby decreasing the total to $96,420. November 29 the Kenton bank borrowed an additional

$10,000, thus increasing its debt to $56,440.13 and at the same time pledged an additional $22,500 of collateral, thereby increasing the total to $118,920. On November 30 the defendant credited the Kenton bank with the payment of $1,512.99, reducing the debt to $54,927.14. On the same day the Kenton bank withdrew $1,512 collateral, thus reducing the amount to $117,408. On December 1 the Kenton bank borrowed from the defendant an additional $50,000, increasing its debt to $104,927.14 and on the same day deposited an additional $43,098 of collateral, increasing the total of pledged collateral to $160,506. On December 2 the defendant credited the Kenton bank with the payment of $14,000 on account, and charged it with a loan of $2,500, thus making the indebtedness existing on that day in favor of the defendant, $93,427.14. On the same day the Kenton bank withdrew $11,500 collateral, reducing that item to $149,006.

In addition to the above indebtendness, all of which arose out of loans made by the defendant to the Bank of Kenton, the latter owed the defendant an additional $3,106.39 upon an overdraft; $3,513.11 upon an item guaranteed by the Bank of Kenton; and $33,714.51 for money advanced to that bank on its checks against a deposit by it on December 2, 1926, of 48 checks and drafts aggregateing $33,714.51. Thus, on the day when the Kenton bank closed it owed the defendant on

| Notes | $ 93,427.14 |
|---|---|
| Overdrafts | 3,106.39 |
| A guaranteed item | 3,513.11 |
| Endorsements | 33,714.51 |
| | $133,761.15 |

Later, the defendant, by recourse to the courts and other methods, made sufficient collections upon the

above-mentioned item of 48 checks to reduce the $33,-714.51 debt to $11,055.49 at the time when the decree was entered in the circuit court.

The plaintiff freely concedes that the defendant at no time prior to December 3, 1926, had any knowledge of the insolvency of the Kenton bank or of any impairment of its capital investment.

Section 88 of 1925 Session Laws, chapter 207 (section 22-802, Oregon Code 1930), provides:

"No bank or trust company shall give preference to any depositor or creditor by pledging the assets of such bank or trust company, except as otherwise authorized by this act; provided, that any bank or trust company is authorized and empowered for any temporary purpose to borrow money or to borrow money and pledge or hypothecate as collateral security therefor its assets not exceeding 25 per centum in excess of the amount borrowed, except that with the previous consent and approval of the superintendent of banks such collateral may be pledged up to but in no case to exceed 50 per centum in excess of the amount borrowed, but only to the extent and upon terms and conditions as follows: 1. Any amount up to but not exceeding the amount of its capital and surplus, without consent of the superintendent of banks; provided, however, that any amount borrowed, except as otherwise provided in this section, in excess of the amount of its capital and surplus at such time actually paid in and remaining undiminished by losses or otherwise, must first be approved in writing by the superintendent of banks; provided also that no excess loan made to any such bank or trust company shall be invalid or illegal as to the lender, even though made without the consent of the superintendent of banks; provided also that the rediscounting with or without guarantee or indorsement of notes, drafts, bills of exchange or loans is hereby authorized and shall not be limited by the terms of this act, and shall not be considered as borrowed money within the meaning of this section".

The plaintiff contends that the pledges of security by the Kenton bank to the defendant were made in violation of the above statute, and that they are void. He concedes, however, that the statute justifies a bank in securing a lender with a pledge whenever the pledge and the borrowing are simultaneous and when neither exceeds the limits specified in the act. The defendant admits that this statute renders void a pledge made to secure a preexisting debt whether the indebtedness be due to a depositor or any other creditor. We quote from its brief: "As heretofore pointed out in the discussion of 'preferences' security given for a preexisting debt comes within the condemnation of the statute and is void as a preference".

■ Since section 195 of the act (section 22-803, Oregon Code 1930) prescribes a penalty of a fine and imprisonment for violation of section 88, the act is penal in character and should be strictly construed: *Pacific Title & Trust Co. v. Sargent,* 73 Or. 485 (144 P. 452). Likewise, since the statute restricts common law rights, we are further cautioned to construe its provisions strictly.

■ Since we are compelled to determine whether the Kenton bank's borrowings exceeded the statutory limitation, and are also compelled to determine what portion, if any, of the pledged collateral the defendant may retain, we deem it advisable at this point to decide what portion of the above four items constituted borrowings by the Kenton bank from the defendant within the meaning of that word as it is used in section 88 of the statute.

Since the item of $93,427.14 is represented by notes given by the Kenton bank to the defendant in the ordi-

nary course of business when the latter loaned money to the Kenton bank, it is clear that this item constituted borrowings.

■ The item of $3,106.39 arose when the Kenton bank overdrew its account with the defendant to that extent. It is generally held that payment by a bank of an overdraft amounts to a loan to the depositor: *Prowinsky v. Second National Bank,* 49 App. D. C. 363 (265 Fed. 1003, 12 A. L. R. 358) ; 7 C. J., Banks and Banking, p. 682, § 410. The practice which the two banks developed under the 1919 agreement caused the Kenton bank's account with the defendant to be frequently overdrawn. We believe that a conclusion is warranted that this item was a borrowing by the Kenton bank from the defendant within the meaning of that word as it is employed in section 88 of the 1925 act.

■ We come now to the item of $33,714.51. December 2, 1926, the Kenton bank, pursuant to the course which it had regularly followed, deposited with the defendant a large number of checks and drafts which had been deposited with it by its customers. These instruments were not drawn upon either the defendant or the Kenton bank. Among the items were 48 checks and drafts aggregating $33,714.51, all of which bore the unrestricted endorsement of the Kenton bank. The defendant at once credited the Kenton bank's account with $33,714.51, and later honored checks drawn by it against its account to an extent exceeding $33,741.51. The following day when the drawers of these checks and drafts learned that the Kenton bank had suspended business they countermanded payment of these items. Still later, by recourse to the courts and other means, the defendant collected a large sum of money upon these checks and drafts which at the time when

the decree was entered in the circuit court amounted to $22,659.02. The record warrants the conclusion that while the entry made by the defendant in the Kenton bank's deposit book treated these items as cash, yet the defendant accepted them for collection purposes only. The privilege which it granted to the Kenton bank to draw checks against its account in an amount equal to the total of these 48 items was a privilege of borrowing that amount of money while the deposited items were in process of collection. We conclude that the various checks which the Kenton bank drew against this deposit were borrowings from the defendant within the contemplation of section 88. The record does not disclose how many checks the Kenton bank drew against this deposit, but under the view we take of the circumstances each check was a borrowing. Hence, from these borrowings a balance of $11,055.49 remains unpaid.

■ The item of $3,513.11 was a debt which the Kenton bank incurred in favor of the defendant arising out of the circumstances that it persuaded the latter to issue a letter of credit authorizing a firm in China, named in the letter, to draw upon one of the customers of the Kenton bank, W. L. Crowe & Company, in the amount of $3,500. At the same time the Kenton bank entered into an undertaking to protect the defendant against any loss from its participation in the transaction. Later, when the draft was presented to the defendant, it accepted the same and charged the amount to the Kenton bank. Still later Crowe & Company drew its check in the appropriate sum to reimburse the defendant for the sum stated in the draft, and delivered the check to the Kenton bank, but it was never forwarded to the defendant. It is evident that this transaction

nowhere contemplated that any money should be advanced to the Kenton bank by the defendant, and none was. We fail to find in this trasaction any element of a borrowing by the Kenton bank from the defendant.

The total derived by adding together the $93,427.14 (note item), $3,106.39 (overdraft item), and $11,055.49 (the unpaid balance of the $33,714.51 item) is $107,-589.02, which is the total of borrowings the Kenton bank made from the defendant. As security for that sum it seeks to retain $149,006 collateral.

It will be noted from the portions of section 88 previously quoted that a borrowing is restricted to "any amount up to but not exceeding the amount of its capital and surplus, without consent of the superintendent of banks; provided, however, that any amount borrowed, as otherwise provided in this section, in excess of the amount of its capital and surplus at such time actually paid in and remaining undiminished by losses or otherwise must first be approved in writing by the superintendent of banks". The total capital and surplus of the Kenton bank, when unimpaired, aggregated $66,000, but during all of 1926 the bank was insolvent and, accordingly, its borrowings exceeded this limitation. The total collateral which the above section of our laws authorizes a bank to pledge to a lender is "not exceeding 25 per centum in excess of the amount borrowed, except that with the previous consent and approval of the superintendent of banks such collateral may be pledged up to but in no case to exceed 50 per centum in excess of the amount borrowed".

It will be observed that the statute expressly declares: "No excess loan made to any such bank or trust company shall be invalid or illegal as to the lender, even though made without the consent of the super-

intendent of banks". This section of our laws clearly justifies the conclusion that the defendant was entitled to payment of its loans, even though the loans exceeded the amount which the Kenton bank was entitled to borrow. But the problem remains whether the defendant is entitled to retain security for loans made to the Kenton bank at a time when that bank could not lawfully borrow. While the statute expressly validates the excess loan it makes no mention of the collateral. Without the security the right to demand payment of the loan would possess no value because sections 143 and 146 of the act (sections 22-2004 and 22-2003, Oregon Code 1930) provide that in the event of the liquidation of any bank the depositors "shall have a first, prior and exclusive lien upon all the assets of such bank or trust company, and in the distribution of such assets or the proceeds thereof, the same shall be first applied to satisfy the amount due such depositors". The security pledged for a debt follows it no matter how the debt may be modified or into whose hands it may pass. It is merely collateral to the debt and is only incidental to it: *National Live Stock Bank v. First National Bank,* 203 U. S. 296 (27 S. Ct. 79, 51 L. Ed. 192); *National Bank v. Matthews,* 98 U. S. 621 (25 L. Ed. 188); *Batesville Institute v. Kauffman,* 85 U. S. 151 (21 L. Ed. 775); *Carpenter v. Longan,* 83 U. S. 271 (21 L. Ed. 313); *Edwards v. Bay State Gas Co.,* 184 Fed. 979. Since the loan is valid as to the lender, even though it is for an excessive amount, it seems difficult to conceive of any reason why the pledge to secure its payment should not also be deemed valid unless it violates some provision of the act, as, for instance, a limitation upon the pledging power of the bank. The legislature surely did not intend to assure the lender that his loan was valid and at the same time intend that he should

never be in a position to collect it by depriving him of his security, after relegating him to a position subordinate to that of the depositor. The act contains no declaration that the security pledged in support of an excessive loan is invalid, and, since the excessive loan is valid as to the lender, we are of the opinion that the pledge is likewise valid.

It will be recalled that the total amount loaned by the defendant to the Kenton bank was $107,589.02; that the total amount of collateral retained by the defendant was $149,006; and that the total amount of security which the statute authorizes a borrower to pledge, without the bank superintendent's approval, is an amount not exceeding the borrowing by more than 25 per cent. It is apparent that the defendant retains an excessive amount of collateral. Our inquiry now concerns the effect of this provision of the statute upon the 1919 agreement, and whether it invalidates the entire pledge, the excessive margin, or leaves the pledge untouched, concerning itself only with the offending bank official. The defendant has presented an extensive argument in support of the latter proposition, while the plaintiff contends that the entire pledge is void.

■ Section 88 of the 1925 act prohibits all pledges "except as otherwise authorized by this act". It nowhere authorizes a pledge in favor of a creditor except the one in favor of a lender of which we have already taken note. We shall not pause long to determine whether the word "preference" appearing in section 88 is employed in its popular sense or expresses the more limited implications attached to it in insolvency statutes, although we notice that the South Dakota court has declared that the word "preference" ap-

pearing in its statute, which is somewhat similar to ours, should be interpreted in harmony with its common meaning: *Hirning v. Toohey,* 49 S. D. 496 (207 N. W. 462). See also *Citizens' State Bank v. First National Bank,* 98 Kan. 109 (157 P. 392, L. R. A. 1917A, 696). If we should construe "preference" as possessing the meaning given to it in insolvency statutes, the defendant's position would not be improved because it received the pledges when its pledgor was insolvent. We are satisfied that the word "preference" is only one of the many which must be construed in determining what pledges are authorized. The entire act, in our opinion, clearly indicates a general purpose to preserve the assets of banks free from all liens except the one granted to the depositors. To this general purpose there are only the specific exceptions created by the following sections: Section 88 permits a pledge in favor of a lender; section 90 permits a pledge to secure a deposit of public funds; section 139 permits a savings bank to make a pledge to secure a borrowing; and section 144 recognizes the rights of a cestui que trust in property held by a bank as trustee.

A review of the cases wherein the courts have determined the validity of pledges made by banks clearly reveals hostility towards pledges, and a determination to yield full effect to legislation enacted for the purpose of prohibiting them.

Courts have frequently held void pledges of assets to secure a favorite depositor, even though no statute was contravened. They hold that public policy is opposed to a pledge in favor of one depositor at the expense of others: *Commercial Bank & Trust Co. v. Citizens' Trust & Guaranty Co.,* 153 Ky. 566 (156 S. W. 160, 45 L. R. A. (N. S.) 950, Ann. Cas. 1915C, 166); *Divide*

*County v. Baird,* 55 N. D. 45 (212 N. W. 236, 51 A. L. R. 296) ; *Farmers' & Merchants' State Bank v. Con. School Dist.,* 174 Minn. 286 (219 N. W. 163, 65 A. L. R. 1407) ; *Farmers' State Bank v. County of Marshall,* 175 Minn. 363 (221 N. W. 242) ; *Arkansas-Louisiana Highway Improvement Dist. v. Taylor,* 177 Ark. 440 (6 S. W. (2d) 533) ; *Foster v. City of Longview* (Tex.) 26 S. W. (2d) 1059; *Austin v. Lamar County* (Tex.) 26 S. W. (2d) 1062; *Smith v. Baltimore & O. R. Co.,* 48 Fed. (2d) 861.

In other jurisdictions where a statute authorizes a pledge to secure depositors of a kind specified by it, as, for instance, a municipal corporation, pledges are held void which exceed or ignore the statutory limitation: *Hirning v. Toohey,* 49 S. D. 496 (207 N. W. 462), 50 S. D. 457 (210 N. W. 723) ; *Smith v. Continental State Bank,* 11 Fed (2d) 907; *Mechanics & Metals National Bank v. Smith,* 21 Fed. (2d) 128; *Smith v. First National Bank,* 21 Fed. (2d) 135. In *Commercial Banking & Trust Co. v. Citizens Trust & Guaranty Co.,* supra, the pledge was in favor of a surety company which had signed an undertaking protecting the county's deposit in the bank. The pledge was held void even though no statute prohibited it. In *Smith v. Continental State Bank,* supra, the bank made a pledge in order to induce the holder of a certificate of deposit which it had issued to grant an extension of time. The pledge was declared void.

The holdings of the above decisions are founded upon the conviction that since the assets of the bank, apart from the original payments by the stockholders, are the contributions of all the depositors, none should have a prior lien upon any part in the event of insolvency. The courts pointed out that the security of the

favored depositor is at the expense of the others; that pledges to secure one or a few can only be effective when secretly made for, when exposed, confidence in the bank is destroyed, and accordingly a bank statement, making no mention of secret pledges, becomes a false representation to the depositors and prospective depositors. It is evident that the courts were not prompted by a purpose to regulate the mechanics of banking or limit charter powers, but by a conviction that the regulations which they were enforcing were intended to protect depositors against unfair banking practices.

We readily recognize the difference between a depositor and a creditor, pointed out in the following decisions: *Farmers' & Merchants' State Bank v. Con. School Dist.,* supra; *Divide County v. Baird,* supra; *Commercial Banking & Trust Co. v. Citizens T. & G. Co.,* 153 Ky. 566 (156 S. W. 160, 45 L. R. A. (N. S.) 950, Ann. Cas. 1915C, 166), but an unauthorized pledge, whether to a depositor or to a lender, is equally injurious to the other creditors of the bank.

It is true that the statute does not expressly declare void a pledge in violation of its limitations, but it plainly indicates that the legislature regarded a pledge in violation of it a serious offense, for it prescribes a fine of not less than $1,000 or confinement in the penitentiary for not more than five years for any bank official who makes an unauthorized pledge. Not only does section 88 preserve the assets of the bank free from liens, except those authorized by that section, but sections 143 and 146 also proscribe liens. Those two differ only in the particular that section 143 concerns itself primarily with savings banks, whereas section 146 deals with commercial banks. Both sections pro-

vide that the depositors of the bank "shall have a first, prior and exclusive lien upon all of the assets of such bank". However, an occasional other section of the act, as for instance, section 90 (section 22-804, Oregon Code 1930) modifies the general language just quoted.

In *Uhlmann v. KinDaw,* 97 Or. 681 (193 P. 435), this court considered the legal effect of an act which con- flicted with a statute. In that case one of the parties to an agreement had not complied with the assumed-name statute. The consequences which followed violation of that statute as prescribed by its own terms were: (1) punishment by fine; (2) the creation of a presumption that the derelict party had secured his credit fraudu- lently; and (3) the denial to him of the right to main- tain suits and actions. We quote from the decision:

"The rule that an agreement is illegal and unen- forceable if it conflicts with the provisions of a statute is not inexorable and unbending. If a statute having a penalty and a prohibition, express or implied, or only a penalty or only a prohibition, is silent and otherwise contains nothing from which the contrary is to be in- ferred, then an agreement which conflicts with the statute is void. However, upon finding a statute with either a penalty or a prohibition, or both, the court is not immediately debarred from further prosecuting an inquiry as to whether an agreement is void and unen- forceable in a court of justice: Harris v. Runnels, 12 How. 79, 84 (13 L. Ed. 901. [See also Rose's U. S. Notes]. The inquiry is as to the legislative intent, and that may be ascertained, not only by an examination of the express terms of the statute, but it may also be implied from the several provisions of the enactment. Of course, if a statute expressly declares that an agree- ment made in contravention of it is void then the in- quiry is at an end; but in the absence of such a declara- tion, the court may take the statute by its four corners and carefully consider the terms of the statute, its object, the evil it was enacted to remedy and the effect

of holding agreements in violation of it void for the purpose of ascertaining whether it was the legislative intent to make such agreements void.   *   *   *''

This court there held that the primary purpose of that statute was not to prevent business but to require the performance of the statutory act as a safeguard for those who were dealing with the business conducted under the assumed name. The decision pointed out that the last two of the above three mentioned consequences which follow failure to file the certificate were incompatible with the suggestion that such failure rendered the agreement void. It held that the action could be maintained. See also *Lloyd Garretson Co. v. Marvin & Co.*, 128 Or. 191 (274 P. 128); and *Pennicard v. Coe*, 124 Or. 423 (263 P. 920).

Let us now examine the statute and review the defendant's criticism of it, and then endeavor to apply the rules announced in *Uhlman v. KinDaw* in determining whether the defendant may retain all or any part of the collateral it possesses.

The defendant contends that section 88 of 1925 Session Laws, chap. 207 (section 22-802, Oregon Code 1930), does not invalidate forbidden pledges ''nor operate to destroy the security for money borrowed on the strength thereof''. It cites in support of these contentions: *Union National Bank v. Matthews*, 98 U. S. 621 (25 L. Ed. 188); *Thompson v. St. Nicholas National Bank*, 146 U. S. 240 (13 S. Ct. 66, 36 L. Ed. 956); *Sioux City Terminal Co. v. Trust Co. of N. A.*, 82 Fed. 124 (27 C. C. A. 73); *Weber v. Spokane National Bank*, 64 Fed. 208 (12 C. C. A. 93); *Booth v. Atlanta Clearing House Ass'n.*, 132 Ga. 100 (63 S. E. 907); *In re Johnson*, 224 Fed. 180; *National Bank v. Whitney*, 103 U. S. 99 (26 L. Ed. 443); *Union Gold Mining Co. v. Rocky Moun-*

*tain N. B.,* 96 U. S. 640 (24 L. Ed. 648) ; *Portland National Bank v. Scott,* 20 Or. 421 (26 P. 276) ; *Kerfoot v. Farmers & Merchants Bank,* 218 U. S. 281 (54 L. Ed. 1042, 31 S. Ct. 14) ; *Beach v. Wakefield,* 107 Iowa 567 (76 N. W. 688, 78 N. W. 197) ; 6 Michie, Banks and Banking, p. 168, § 5.

In *Union National Bank v. Matthews* it appeared that a national bank had made a loan, in violation of federal statutes, upon real estate security. When the bank sought to realize upon the security the owner sued to enjoin the sale. The court pointed out that the statute nowhere forbade satisfaction out of the security, and contemplated that only the danger of a judgment of ouster was intended to restrain national banks from loaning upon real estate security. *National Bank v. Whitney* also involved a loan by a national bank upon real estate security and reached a similar result. In *Thompson v. St. Nicholas National Bank* the facts were that bonds were pledged to a bank under an agreement which authorized it to make sale if the pledgor failed to pay any debt owing by him to the bank after the same became due. Later the bank certified the pledgor's checks when he had no money on deposit although a federal statute prohibited a national bank from so doing. The statute prescribed a penalty for the offending bank officer but none for the bank, except that it authorized the comptroller to wind up the bank's affairs whenever it appeared that the prohibited act had been done. The pledgor failed to redeem the checks, and the problem for solution was whether the bank was entitled to satisfy its claim out of the bonds. The court upheld the bank's claim, and in so doing pointed out that the pledge preceded the act of certification and that the two were not parts of a

single agreement. It held that a pledge to secure a bank against loss upon subsequent debts in its favor is not unlawful and that, since a check certified by a bank creates a debt against it, the bank was justified in satisfying the debt out of the bonds. In *Sioux City Terminal Co. v. Trust Co. of N. A.* the facts were that an industrial corporation borrowed more than it was authorized to by its charter and the state statute. In a suit to enforce the debt the defense was that the loan was illegal. The statute provided no penalty and did not declare excess loans void. The court held that the unauthorized act was a mere excessive use of a right which the corporation possessed; that no moral turpitude was involved, and that the remedy for the violation of the statute was a suit by the state to dissolve the corporation. This decision was affirmed upon appeal to the federal supreme court. See 173 U. S. 99 (43 L. Ed. 628). Another group of litigants confronted with the same excessive loan met with a like decision in the state courts: *Beach v. Wakefield,* 107 Iowa 567 (76 N. W. 688, 78 N. W. 197). In *Weber v. Spokane National Bank,* the facts were that a national bank exceeded the borrowing capacity permitted by federal statutes. In sustaining the validity of its debts, the court pointed out that the statute did not declare the excessive indebtedness void, and prescribed no penalty except charter forfeiture. In *Union Gold-Mining Co. v. National Bank* a similar situation was before the United States Supreme Court and the court held the defense by the bank ineffective. In *Booth v. Atlanta Clearing House Assn.* a bank, of which Booth was the receiver, had pledged during the course of the 1907 financial panic collateral to secure the payment of clearing house certificates issued to it. After placing the certificates in circula-

tion it became insolvent, the receiver sued to recover the collateral, charging that the bank was insolvent when it made the pledge, and hence had violated a statute applicable to preferences. He did not tender a return of the certificates. The suit was dismissed without mention of any principle of law helpful to our problem. *In re Johnson* arose out of a loan of $3,800 made by a brewer upon the security of a mortgage upon the equipment of a saloon. The defense was that a statute denied to liquor manufacturers the right to "own all or any part or to have any interest in the liquor stock, fixtures or equipment of any kind whatsoever of any retail liquor store". The court held that the word "interest" did not include a mortgagee's right and therefore held the mortgage valid. In *Gold-Mining Co. v. National Bank* the facts were that a national bank, in violation of an act of congress, had loaned to one Sabin an amount greater than one-tenth of its paid-in capital stock. He alleged this violation of the statute as his defense. It was held that the excessive loan did not render it void. In *Portland National Bank v. Scott* the facts were similar to those in the case just mentioned. We there held the loan valid, and that only the federal government could take advantage of the irregularity. In *Kerfoot v. Farmers & Merchants Bank* the problem was similar to that in *Union National Bank v. Matthews* and in *National Bank v. Whitney*. In the Kerfoot case a conveyance of real property was made to a national bank to be held by it in trust. The plaintiff, who was the heir of the grantor, now deceased, attacked the conveyance, calling attention to the federal statutes which provided that a national bank was without power to take realty. The court held that although the statute forbade na-

tional banks from making loans upon real property the security was not void and could not be assailed by the debtor. Here again the court pointed out that the check against the unauthorized act was the impending danger of charter forfeiture. Michie, Banks and Banking, Vol. VI, p. 168, § 5, is based almost exclusively upon the decisions which we have just reviewed.

It will be observed that in the foregoing cases the statute which rendered the act ultra vires was one of commercial convenience, directory as distinguished from mandatory, or was enacted for the management of the internal operation of the corporation, and was not deemed by the courts one intended to afford protection against overreaching, fraud or unfair business practices. In virtually all of the above instances the statute exacted no penalty except charter revocation, and afforded no indication of a legislative intent to declare the ultra vires act void. In all of the foregoing instances, except the Thompson case, the court was convinced that the only check which the law-making branch of the government intended to impose upon the corporation as a safeguard against the commission of the forbidden act was the impending danger of a dissolution of the corporation upon the suit of the sovereign. And in virtually all of the above cases the offense was against the sovereign with practically no resulting injury to the depositor. In the Weber case a holding that the loan was invalid would have penalized the depositors and not the banking corporation which was insolvent at the time of the litigation.

The defendant next contends that even though we should conclude that the statute forbade the Kenton bank to pledge more collateral than the amount specified in the act, we can not hold that the excess pledge

is void, for such a holding (according to the defendant) would impose a penalty in addition to the one designated in the statute. In support of its contention, the defendant cites: *Hanover National Bank v. First National Bank,* 109 Fed. 421 (48 C. C. A. 482); *Leonard v. State Exchange Bank,* 236 Fed 316; *State ex rel. Davis v. Farmers State Bank,* 112 Neb. 597 (200 N. W. 173); *Hardy v. Peoples State Bank,* 185 Wis. 446 (201 N. W. 725); *Kerfoot v. Farmers & Merchants Bank,* 218 U. S. 281 (31 S. Ct. 14, 54 L. Ed. 1042); *National Bank v. Whitney,* 103 U. S. 99 (26 L. Ed. 443); *The Seattle,* 170 Fed. 284 (95 C. C. A. 480); *Sioux City Terminal Co. v. Trust Co. of N. A.,* 82 Fed. 124 (27 C. C. A. 73); *Hirschfeld v. McCullagh,* 64 Or. 502 (127 P. 541, 130 P. 1131); *Shipman v. Portland Const. Co.,* 64 Or. 1 (128 P. 989). In *Hanover National Bank v. First National Bank* the facts were that the Hanover bank (of New York) at the request of the First National (of Kansas) discounted a note signed by one Sheldon, president of the First National, and paid the proceeds to the latter. When the note was not paid the Hanover bank sued the First National and was met with the defense that, although the note was really the obligation of the First National, the discounting had taken place pursuant to an unlawful agreement to conceal the First National Bank's liability so that it could evade its duty to report this obligation to the comptroller when it made its report to him, pursuant to section 5211, Revised Statutes. Each of the three judges of the court wrote a decision. Judge Sanborn held that the evidence did not prove the alleged agreement, that Sheldon's intent not to report the liability did not affect the note, and that the agreement to discount was lawful even though it incidentally assisted Sheldon to evade the statute. He next an-

nounced the proposition upon which the defendant relies, stating: "Where a statute commands certain parties to do certain acts, and prescribes the penalties for their violation of the command, it is not the province of the courts to inflict other penalties upon innocent parties not named in the law on account of such violation". Judge Thayer, in concurring, also held that the alleged agreement did not exist, and found no evidence that the Hanover bank had in any way aided the First National Bank's unlawful enterprise. His decision said nothing about increasing a penalty prescribed by statute in the event that a forbidden act is held void. Judge Caldwell, in a very spirited dissenting opinion, found that the alleged agreement was proven and that its purpose was to circumvent section 5211. In vigorous language he expressed the opinion that section 5211 contemplated that all agreements incurred in violation of it were void. In *State v. Farmers Bank* the facts were that the Farmers Bank had procured a loan from the Omaha National Bank when its borrowings already exceeded the limit fixed by a Nebraska statute. Payment of the loan was secured by a pledge of collateral. The receiver of the Farmers Bank sued to recover the collateral. The court held: "It will be noted that this section provides no penalty and, of course, in the absence of legislation providing a penalty in an act upon which the state relies we are powerless to supply a penalty. To do so would be judicial legislation of a most pronounced type. It seems that a consideration of the legislation on this subject in this state leads irresistibly to the conclusion that the law-making body intended the act relied upon by counsel to be directory and not mandatory". *Leonard v. State Exchange Bank* decided a problem similar to that in the case just men-

tioned and upheld the right to collect the debt. The decision cited as authority *Hanover National Bank v. First National Bank* but did not state the reasoning employed. *Hardy v. Peoples State Bank* was a suit to foreclose a mortgage executed by a bank. The defendant alleged that when the note and mortgage were executed the bank failed to comply with a statute which required its board of directors to adopt a resolution stating the amount of the loan, the name of the bank from which the loan should be obtained, and designating two officers to sign the instrument. The statute provided that in the event of its violation and a resulting loss to the bank the guilty officer should make good the loss and that if he failed to do so after notice the bank's charter could be revoked. The court held: "The statutory provision here under consideration reveals no legislative purpose or intent to avoid the contract made in violation thereof. * * * It will be noted that the statute does not condemn the contract nor declare that it shall be either void or voidable. * * * We deem it clear that the regulation was intended to apply to the management of the internal affairs of the bank. * * * This is not a case where a bank has loaned its credit to the detriment of the creditors. * * *" We have already reviewed *Kerfoot v. Farmers & Merchants Bank* and *National Bank v. Whitney,* in each of which the court pointed out that the statute prescribed no penalty but contemplated that the danger of a revocation of the charter of a bank which loaned money upon real estate security was a sufficient deterrent to restrain banks from making such loans. It is apparent that the decisions were not based upon any belief that to hold the note void would increase the penalty, but upon a conviction that Congress

never intended the note to be void. In *The Seattle* the facts were that each of the two parties to the litigation owned notes executed by the owner of a dredger. A fund was available for the payment of the notes but it was insufficient to satisfy both obligations and the litigation concerned priority of right to the fund. One of the parties in endeavoring to overcome the effect of the other's priority in time contended that the bank, which was the original payee of the one note, had violated section 5200 of the Federal Revised Statutes by making a loan to the borrower in an amount which exceeded the limits designated in the statute. The court, in holding this plea ineffective, declared: "The law has imposed no penalty upon a national bank for its failure to obey the restrictions unless it be that its charter thereby becomes subject to forfeiture under section 5239. The court may not inflict penalties other than those which are imposed by statute". Since the bank no longer owned it, nothing done to the note would have affected the bank. We have already reviewed *Sioux City Terminal Co. v. Trust Co.* In *Shipman v. Portland Construction Co.*, we held that a contract made by a foreign corporation which had failed to comply with our laws regulating foreign corporations was unenforceable during the delinquency but not void. In *Hirschfeld v. McCullagh* substantially the same problem was before this court. The decision declared: "The section last cited requires the appointment of such attorney and * * *. Taking the act by its four corners and construing the sections together we think it may reasonably be adduced that the corporation must appoint the attorney and report that fact to the secretary of state in its annual statement. If it has neglected to appoint the attorney it cannot, of

course, make the report required by law and is liable to a penalty for a failure to do so. The law having prescribed the penalty by way of fine the court cannot impose an additional penalty by way of forfeiture; the omission not being malum in se ''.

It will be observed from this review of the foregoing group of decisions that four of them involved loans made by national banks. Two of those loans were made upon real estate security; the third was in an excessive amount, and the fourth, according to the borrower, was made in a fraudulent manner so as to enable the borrowing bank to evade its duty under a federal statute. The statute prohibiting loans upon real estate security fixed no penalty, did not declare the forbidden loan void and merely contemplated a proceeding by the government to forfeit the bank's charter. The note given to the national bank which had made the excessive loan was no longer owned by the bank but was involved in a suit between its new owner and a third party who were endeavoring to establish priorities to a fund. Here also the statute which restricted the size of a loan fixed no penalty but contemplated that the right to revoke the bank's charter would sufficiently deter violations. In the fourth case, where the national bank was charged with having written into a note the name of a fictitious borrower so as to enable the real borrower (another national bank) to evade its duty to report to the comptroller, the majority of the court found that the evidence did not sustain the charge, but the dissenting judge viewed the facts otherwise and expressed a vigorous opinion that this unlawful act rendered the note void. Of the remaining five cases one concerned an excesive borrowing by a state bank under a statute which prescribed no penalty and which

contemplated that charter revocation should be the sole check against violations of the statute; the second concerned a borrowing by a bank which had failed to comply with a statute which prescribed a routine pro-· cedure for borrowers to follow; the third was an excessive borrowing by an industrial corporation; and the remaining two cases were based upon violations of the Oregon statute regulating the entry of foreign corporations into our state. We there held that the statute strongly indicated that the contracts made by delinquent corporations were valid. It will be observed that only one of the above cases was concerned with an act which attempted deception. In all of the cases the court could find no language in the statute which indicated a legislative purpose to render the note or other obligation void. In some of the foregoing instances the offending corporation had become insolvent and hence a forfeiture of the debt would not have been a penalty upon the guilty corporation but upon the non-offending creditors.

It is obvious that a legislative omission to prescribe a penalty cannot be supplied by judicial decree, but when the act itself indicates that the legislature intended to forbid all agreements made in violation of its terms a decree holding nugatory a proscribed agreement is not an additional penalty but is merely the judicial means of carrying into effect the legislative will. Thus, if section 88 renders it unlawful for a bank to secure a loan with a pledge of assets in excess of 50 per centum of the amount borrowed, a decree requiring a return of the excessive collateral is not a penalty added by judicial decree to those fixed by the legislature but is judicial action based upon statutory foundation. We are, therefore, brought face to face with the

problem whether the above act expresses a legislative determination to render void all excessive pledges.

All banking laws are intended to promote the safety of the banks (*Sargent v. Oregon Savings & Loan Co.*, 73 Or. 99 (144 P. 455)) and such objective cannot be achieved unless the safety of the depositors is the paramount consideration. Sections 143 and 146 give the depositor "a first, prior and exclusive lien on all of the assets" of the bank and thereby manifest a purpose to make the depositors' safety the primary objective of the statute. Section 88 authorizes an encroachment upon the general depositors' lien when a bank desires to borrow money. It permits a borrowing secured by a pledge, but only a safe borrowing. If a bank, because of bad management, cannot obtain the approval of the superintendent of banks it can pledge no more than a margin of 25 per cent excess. If the bank has invested its funds in securities of such doubtful value that it cannot find a lender who is willing to make a loan upon the security offered by the above-mentioned percentages of collateral, then section 88 plainly contemplates that the borrowing shall not take place. Since section 88 is a part of the laws of this state, it is fair to assume that some depositors are aware of its restrictions and have them in mind when they study the published statements of the bank with which they have an account. Manifestly this statute is not one which merely regulates the internal mechanism of the bank so as to facilitate the convenience of some later operation, but is one which concerns itself with the well being of the bank and which protects the lien given to the depositors by sections 143 and 146. All banks from time to time publish statements showing the condition of their affairs. These statements

are representations upon which people rely when they begin or continue their relationship with the bank. Since the depositor is assured by the above statute that the bank cannot pledge an excess margin of more than 50 per cent as security for a loan the published statement would become an actually false representation if an excessive pledge was immune from judicial interference. See *Farmers State Bank v. Con. School Dist.*, supra, and *Smith v. Baltimore & Ohio R. R. Co.*, 48 Fed. (2d) 861. If we should declare unauthorized pledges safe from attack, a greedy lender could empty the vault of a tottering bank and leave behind for the depositors only the culls which he deemed of insufficient value to cart away. In the meantime, the bank could publish its periodical statements deceiving its depositors into the belief that its assets were in its vaults and free from liens. When the legislature wrote sections 88, 143 and 146 it surely did not intend to penalize the offending bank officer with the severe penalties prescribed in section 195 and yet regard the pledge as so completely lawful that the courts would be compelled to enforce it. Rendering unauthorized pledges void and penalizing those who attempt to make them seems to be the purpose of the act. We need not cite authorities in support of the statement that statutes which prescribe penalties to protect against imposition render void all agreements in conflict therewith. It must be self-evident that if a party cannot sustain his position without depending upon an illegal contract he is bound to lose. A court cannot sanction what the legislature has prohibited. The authority given to banks to ''pledge or hypothecate as collateral security therefor its assets not exceeding 25 per centum * * * except that with previous consent * * *

such collateral may be pledged up to but in no case to exceed 50 per centum'' is a denial of any authority to pledge more assets than those amounts. That which is not within the exception is forbidden. We conclude that the act is mandatory in nature and that it affects the pledge as well as rendering criminal the act of the official who made it. In *Citizens State Bank v. First National Bank,* 98 Kan. 109 (157 P. 392, L. R. A. 1917A, 696) the court reached a like conclusion under a statute substantially similar to ours. In *State v. Savings Bank,* 136 Iowa 79 (113 N. W. 500), a savings bank made a borrowing although the statute denied that privilege to such institutions. The court held the borrowing was ''one prohibited by law and therefore unlawful''. The obligation was held void. It will be recalled that in the numerous cases cited in preceding paragraphs pledges to secure favored depositors were held void. See also *Smith v. First National Bank of Sherman* (S. D.) 239 N. W. 842.

The question now occurs whether the 1919 agreement is void and whether the defendant must return all of the pledged collateral or only such portion of it as exceeds the 125 per cent limitation.

The 1919 agreement does not mention percentages nor any specific pledge of collateral. The two banks could have readily performed their undertakings concerning pledges without violating any part of the 1925 act. We are aware of no reason for declaring that the provisions of that agreement concerning pledges conflict with the legislative act before us. The act condemns only excessive pledges. It will be observed from the statement of facts recited in a preceding paragraph that all of the collateral which the defendant possessed on December 3, 1926, had not come into its possession in a single moment. Scarcely a day passed

when the Kenton bank did not bring to the defendant's vaults a quantity of commercial paper, or withdraw some previously deposited. Thus, the amount in defendant's possession constantly fluctuated. When the Kenton bank suspended business the defendant possessed such a large amount of collateral that its security exceeded the statutory limitation of 125 per cent. The plaintiff demanded the surrender of these pledged assets and the defendant refused. When the defendant insisted upon retaining all that it possessed it for the first time announced an attitude in conflict with section 88. In our opinion that section of our laws does not demand a holding that the defendant must forfeit all of its security. We believe that the purpose of that enactment will be fully served by requiring it to surrender all of the collateral which it possesses in excess of the statutory limitation.

We have not overlooked the plaintiff's contention that the pledge and the borrowing must be simultaneous acts. The plaintiff has directed our attention to *Mechanics & Metals National Bank v. Smith,* 21 Fed. (2d) 128; *Smith v. First National Bank of Sioux City,* 21 Fed. (2d) 135; *Citizens State Bank v. First National Bank,* 98 Kan. 109 (157 P. 392, L. R. A. 1917A, 696); *Smith v. First National Bank of Sherman,* (S. D.) 239 N. W. 842, in which the courts, in applying statutes somewhat similar to ours, declared that the borrowing and pledging must be simultaneous and held that a pledge in behalf of a preexisting debt was void. We would not hesitate to declare void a pledge made to secure a preexisting debt but are aware of no reason for holding that a prospective borrower, or one whose needs are intermittent, cannot leave with the lender a quantity of collateral to take care of future needs.

The defendant, in anticipation of a construction of section 88 holding that an excessive pledge is wholly or partly void, presents two additional contentions: (1) that the statute can have no application to a national bank; and (2) that, since the charter of the Bank of Kenton placed no restriction upon its borrowing and pledging powers, an application of this statute to that institution would violate constitutional provisions that protect contractual rights against impairment.

The first of these contentions is accompanied by the argument that since the defendant, as a national bank, is an instrumentality of the federal government, Oregon cannot impair its efficiency, and that a limitation upon the borrowing and pledging capacity of state banks impairs the defendant's usefulness. As an instrumentality of the federal government, a national bank, like federal officials, is subject to the state's general laws which are intended to promote honesty and fairness in business transactions: *Abilene National Bank v. Dolley,* 228 U. S. 1 (33 S. Ct. 409, 57 L. Ed. 707); *First National Bank v. Commonwealth of Kentucky,* 76 U. S. 353 (19 L. Ed. 701); *Steadman v. Redfield,* 67 Tenn, 337. In several of the cases mentioned in preceding paragraphs the courts applied state banking legislation to claims asserted by national banks and held the claims void because of their conflict with the statute. See, for instance: *Mechanics & Metals National Bank v. Smith,* supra; *Smith v. First National Bank of Sioux City,* supra; *Citizens State Bank v. First National Bank,* supra; *State v. Savings Bank,* supra; *Smith v. First National Bank of Sherman,* supra. This contention is without merit.

The second of these two contentions is not presented by the Bank of Kenton, but by a stranger to the contract which was effected when the state granted the bank its charter. It is possible that the restriction which 1925 Session Laws, chap. 207, section 88, imposed upon the state bank's borrowing and pledging power may have been entirely agreeable to it. It is apparent from the views expressed above that we construe the 1925 act as an exercise of the police power of the state intended to promote the public welfare and protect depositors against imposition. The unlimited borrowing and pledging powers which were conferred upon the Bank of Kenton by its charter were not immune from restriction when the public welfare demanded that they be restricted. A corporation, like an individual, is always subject to laws which are intended to carry into effect the police power of the state: Mott, Due Process of Law, p. 393; 7 R. C. L., Corporations, p. 93, § 7; *Platte etc. C. & M. Co. v. Dowell,* 17 Col. 376 (30 P. 68). Since the welfare of banks is peculiarly essential to the public welfare, they are subject to the police power more than any other corporations, and are subject to legislation enacted under the police power even though it may restrict powers conferred by their charters: Thompson on Corporations, (3d Ed.) §§ 446 and 491.

This statute does not impose a personal liability upon the stockholders as in *Haberlach v. Tillamook Bank,* 134 Or. 279 (293 P. 927, 72 A. L. R. 1245), nor deprive the corporation of a valuable vested property right as in *Pacific Title & Trust Co. v. Sargent,* 73 Or. 485 (144 P. 452). In both of these cases, which are cited by the defendant, we held that the statute was unreasonable and therefore invalid. We are of the opinion

that subdivision 88 of the 1925 act is a reasonable exercise of the police power and that the restriction which it imposed upon the charter powers of the Bank of Kenton did not affect its validity.

It follows from the preceding that the defendant is entitled to retain a sufficient amount of the collateral in its possession to secure it to the extent of 125 per cent upon the three items which we have held constituted borrowings by the Kenton bank ($107,589.02). The record indicates the order in which the collateral was pledged with the defendant and the subsequent disposition of the same. All collateral accepted by the defendant after it had received the limit permitted by section 88 it must deliver to the plaintiff or account for the proceeds of it. The cause will be remanded to the circuit court with instructions to enter a decree in harmony with the foregoing.

Other matters argued in the briefs have received very careful attention, but we shall not pause to express our opinion concerning their merits.

Reversed.

BELT and KELLY, JJ., concur.

RAND, C. J., dissents.

---

Petition for rehearing denied July 5, 1933

ON PETITION FOR REHEARING
(23 P. (2d) 327)

ROSSMAN, J. Both plaintiff and defendant have presented petitions for a rehearing.

■ The plaintiff argues that we were not justified in holding that the indebtedness which arose in favor of

the defendant when it honored the Kenton bank's checks drawn against the forty-eight checks and drafts (totaling $33,714.51) deposited by the Kenton bank with the defendant, the payment of which was later stopped, was an indebtedness within the purview of the agreement dated October 31, 1919, and of 1925 session laws, chapter 207, section 88 (section 22-802, Oregon Code 1930).

The defendant argues (1) that we should not have excluded as a ''borrowing the item of $3,513.11, being the debt which arose in favor of the defendant out of the letter of credit; (2) that we should have included in the total borrowings, as a debt owing by the Kenton bank to the defendant, the sum of $3,539.49, being the sum which the defendant expended as attorney fees in making collections upon pledged collateral and checks; (3) that we should have regarded as a single borrowing the $33,714.51, instead of regarding as individual borrowings each check drawn by the Kenton bank against its deposit of the forty-eight checks; (4) that we should have deducted from the total of the pledged collateral ($149,006.51) $2,308.16 for shrinkage in values; (5) that we erred in our computation of the total of the borrowings and in the total of the amount of pledged collateral; (6) that we should have made provision for the allowance of interest; (7) that we should not have allowed the plaintiff a recovery of costs; (8) that we erred when we held that 1925 Session Laws, chapter 217, section 88, declares void excessive pledges; (9) that the defendant is not a stranger to the agreement effected between the state and the Kenton bank, evidenced by the charter issued to the latter; and (10) that section 88 of the above act is an unreasonable exercise of the police power of the state.

We have carefully read both petitions for a rehearing, and have again bestowed much attention upon this item of litigation, but we find no occasion for setting forth an extended recital of our views.

The defendant ought to be allowed interest upon the borrowings made by the Kenton bank until they were liquidated. It ought also to account for all interest accruing upon pledged collateral collected by it. It has volunteered to allow plaintiff 3 per cent interest upon all surplus moneys which it deposited to plaintiff's credit. This item should be computed in the accounting. The defendant errs in its supposition that we regarded the total of $93,427.14 owing upon notes as one item. Each note, in our belief, constituted a separate item.

The petitions for a rehearing are denied.

RAND, C. J., BELT, and KELLY, JJ., concur.